# Brown v. The State.

## *Indictment for Murder.*

1. *Correspondence between indictment and copy served on defendant in capital case; when determination of trial judge will not be reviewed on appeal.*—Whether the copy of the indictment served on the defendant in a capital case corresponds with the original is a matter for the determination of the presiding judge, from an inspection and comparison of the two papers, and his determination of the matter will not be reviewed on appeal, where the two papers are not before the appellate court.

[Brown v. The State.]

2. *Quashing venire in capital case; errors in names of jurors.*—Errors in the names of the persons composing the *venire* of jurors served on the defendant in a capital case do not necessitate the quashing of the *venire*.

3. *Trial for murder; necessity of instructing jury as to different degrees of the offense.*—As the statute (Code, § 3728) makes it the duty of the jury, when they find the defendant guilty under an indictment for murder, "to ascertain, by their verdict, whether it is murder in the first or second degree," it is error for the court in such case to decline or refuse to instruct the jury except as to the first degree. *

4. *Discretion of jury as to punishment on conviction of murder in first degree; charge, as to.*—In a trial for murder, the following instruction, in reference to the provision of the statute (Code § 3729) making murder in the first degree punishable with death, or imprisonment in the penetentiary for life, "at the discretion of the jury," is not erroneous: "The court charges you that it is a legal discretion, one which is a duty devolved upon the jury by the law, to be exercised as a grave and solemn duty; and the jury in so determining the punishment may consider the character of the offense, and the circumstances of its commission, if it was committed by the defendant, and all the facts connected with or attendant upon the occurrance as shown by the evidence, and should then determine from a sense of duty which of the punishments so left to their discression by the law is proper in the case, and is best calculated to deter others from the commission of like offenses, and to protect the community from the perpetration of like offenses by others." (BRICKELL, C. J., dissenting.)

5. *Warrant of arrest; sufficiency of.*—A paper issued and signed by a justice of the peace, entitled and directed according to the form prescribed (Code, § 4259) for warrants of arrest, and reading as follows: "Proof having been made before me that the offense of petit larceny has been committed, and that Will Brown is accused thereof, you are therefore commanded to arrest Will Brown, and bring him before me forthwith,"—was not void as a warrant of arrest, and the officer to whom it was directed would not have been justified in refusing obedience to its mandate.

6. *Same; officer looks to warrant alone for his authority.*—Where an affidavit against the person whose arrest was commanded was written on the same sheet of paper with a warrant of arrest issued by a justice of the peace, the officer to whom the warrant was delivered for execution, and the persons called to his assistance, could look for authority and justification to the warrant only. It was not their province to inquire into the connection it may have had with the affidavit; nor, if connected, whether it was regularly or irregularly issued.

7. *Killing officers by persons resisting arrest; when not murder.*—In all cases of the killing of an officer, or of an assistant, in resistance of an arrest, a material inquiry in determining the degree of the homicide is whether the party resisting had knowledge or notice of official character and of presence for the exercise of official authority. If

there is not such knowledge or notice, the homicide cannot be more than manslaughter, unless the resistance was "in enormous disproportion to the threatened injury."

8. *Arrest by person specially deputized; duty to give notice of his authority and purpose.*—When the person making an arrest is an officer of special deputation, for that particular occasion only, whose authority is exhausted and relation terminated when the mandate of the process issuing to him is executed, he is bound to give the party he seeks to arrest some notification of his authority and purpose.

APPEAL from the Circuit Court of Lauderdale.

Tried before the Hon. THOS. R. ROULHAC.

The appellant, Bill Brown, was indicted and tried for the murder of one James Foster, was convicted of murder in the first degree, and sentenced to be hanged. On the trial the defendant moved the cenit to quash the *venire* in the case, on the following, among other grounds : First, that the copy of the indictment furnished the defendant by the order of the court was not a copy of the original indictment on file ; second, because the names of persons who were not summoned and drawn as jurors for said week appeared upon the copy of the *venire* served upon the defendant. After inspection and comparison, the presiding judge ruled that the copy of the indictment served on the defendant corresponded with the original on file, and overruled the first ground of said motion. To this ruling the defendant duly excepted. The bill of exceptions shows that the mistake relied on in support of the second ground of said motion was merely in the initial letters of jurors' names. The court overruled this ground of said motion, and to this ruling the defendant excepted. The evidence for the State tended to show that G. H. Harraway, a justice of the peace, deputized one John Moody to execute the warrant of arrest which is copied in the opinion ; that said Moody summoned James Foster to assist him in making the arrest ; that upon their entering the house where the defendant was, the defendant fired upon said James Foster, inflicting a wound from which he died in a few minutes. The evidence as to the circumstances of the arrest is stated in the opinion.

The defendant separately excepted to the several portions of the court's oral charge to the jury which are copied in the opinion. The defendant requested the court to give to the jury the following written charges, and

[Brown v. The State.]

separately excepted to the court's refusal to give each of them as asked: (1) "I charge you, gentlemen of the jury, that the affidavit and warrant introduced in evidence in this cause shows on its face that the justice had no authority to issue the warrant; and I further charge you that said warrant is no protection to the person deputized to execute it, nor to persons coming to his aid in his effort to execute it." (2) "I charge you, gentlemen of the jury, that the affidavit and warrant introduced in evidence in this case shows on its face that the justice had no authority to issue the warrant; and I further charge you that said warrant has no authority for the arrest of the defendant now on trial, and the defendant had a right to offer such resistance as was necessary to protect himself from arrest thereunder, provided such resistance was not disproportionate to the assault upon the defendant." (3) "I charge you, gentlemen of the jury, that under the undisputed evidence in this case James Foster, the person alleged to have been killed, was a trespasser upon the premises of Jim Kelly; and if the jury believe from the evidence that the defendant was rightfully in the dwelling house on said premises, then I charge you that the defendant was in his castle, and had a right to defend the same against unlawful and forcible intrusion." (4) "I charge you, gentlemen of the jury, that the deceased, James Foster, was engaged in an effort to arrest the defendant without lawful authority at the time he was killed by the defendant, and this fact may be considered by the jury, together with all the other evidence, in determining whether or not the defendant is guilty as charged."

JOHN T. ASHCRAFT, for the appellant, cited Const. of Ala. Art. 1, § 7; *Williams v. State*, 44 Ala. 41; *Maury v. State*, 68 Miss. 605; *Watson v. State*, 83 Ala. 60; Code, § 4322.

WM. C. FITTS, Attorney-General, for the State, cited *McKee v. State*, 82 Ala. 32; *Darby v. State*, 92 Ala. 9; *Jones v. State*, 16 So. Rep. 135; *Seams v. State*, 84 Ala. 410; *Thomas v. State*, Mss.

BRICKELL, C.J.—Whether the copy of the indictment served on the defendant corresponded to the original was

matter for the determination of the judge presiding, and was determinable only by inspection and comparison of the two papers. After inspection and comparison, the judge ruled that there was correspondence. The two papers are not before us, and we cannot say there was error in the ruling. This is equally true of the ruling that the copy of the *venire* served on the defendant corresponded to the original. All reasonable presumptions, consistent with the record, are necessarily indulged, to support the rulings of the primary court.

Mistakes, errors in the names of the persons composing the *venire* of jurors served on the defendant, do not necessitate the quashing of the *venire.*—*Jones v. State,* 104 Ala. 30, and authorities cited.

The objections to the introduction of evidence are not of importance, and it is only necessary to say the evidence was relevant and properly admitted.

The presiding judge, in his general charge, said to the jury : "The court deems it unnecessary to charge the jury in this case upon the law of homicide of any other kind or degree than murder in the first degree, for if those elements which are necessary by the law to establish that offense, and establish the guilt of the defendant thereof, as the court will presently charge you, are established to your satisfaction beyond a reasonable doubt, by the evidence, then, in this case, there is no occasion for the jury to consider any degree of murder except murder in the first degree." It is not shown, and in the presence of this declaration, it cannot be presumed, that the jury were instructed in reference to either of the inferior degrees of criminal homicide. Certainly, it is not surprising that the counsel for the prisoner did not treat this emphatic declaration of the court with so much of disrespect as would have been implied in a request for instructions touching the inferior degrees. The refusal of such instructions was preordained.

Murder at common law was defined, or rather described, by Lord Coke, in these words : "When a person of sound memory and discretion unlawfully killeth any reasonable creature in being, and under the king's peace, with malice aforethought." The presence of malice, express or implied, was the distinguishing characteristic of murder ; as the absence of malice, manifested by the presence of provocation, was the distinguishing charac-

[Brown v. The State.]

teristic of voluntary manslaughter.    The statutes, as has
been often explained, from motives and considerations of
humanity, without changing the common law definition
of murder; without adding to or taking away any of its
constituents; for the purposes of punishment only, have
divided it into two degrees; murder in the first, and
murder in the second degree.    With much of care and
particularity, the essential constituents of murder in the
first degree are described; succeeded by the declaration,
that "every other homicide, committed under such circum-
stances as would have constituted murder at common law,
is murder in the second degree."  Cr. Code, § 3725.   Hav-
ing for the purposes of punishment, divided murder into
two degrees, a mandatory requirement of the statute, is,
that, "When the jury find the defendant guilty under an
indictment for murder, they must ascertain by their ver-
dict, whether it is murder in the first or second degree;
but if the defendant on arraignment confesses his guilt,
the court must proceed to determine the degree of the
crime, by the verdict of a jury, upon an examination of
the testimony, and pass sentence accordingly."    Cr.
Code, § 3728.    The latter clause of the statute varies
from the statutes of some of the other states, which, on
a plea of guilty, or a confession of guilt by the defend-
ant at the bar, commit to the court the finding of the
degree of the crime; and it is significant of the legisla-
tive intent to withhold, in any and all events, that
authority from the judge, committing the duty to the
jury, in exclusion of all such authority.    The original of
the statutes is found in the Penal Code of 1841.    Clay's
Dig. 412, §§ 1–2.    The uniform construction they have
received, since their introduction, has been, without re-
gard to the nature of the offense charged, whether it was
within or without either of the categories specially
enumerated as constituting murder in the first degree,
that a judgment of conviction cannot be rendered on a
verdict of guilty, which does not expressly find the de-
gree of the crime.    *Levison  v. State*, 54 Ala. 520, and
authorities cited; *Dover v. State*, 75 Ala. 40.    In *Cobia
v. State*, 16 Ala. 781, the first case presenting the ques-
tion, the jury had returned a verdict of "guilty in man-
ner and form as charged in the indictment," on which
the court, (the statute then authorizing the court, on a
verdict of guilty of murder in the second degree, to fix

the term of imprisonment; an authority now conferred on the jury exclusively), pronounced sentence that the prisoner be imprisoned in the penitentiary for ten years, the lowest punishment for murder in the second degree. Dargan, C. J., speaking for the court, said: "We think it very clear that the verdict of the jury does not warrant the sentence pronounced by the court. The verdict finds the accused guilty in manner and form as charged in the indictment. So, if the defendant had pleaded guilty, or confessed his guilt, the record would only have shown that the prisoner was guilty of murder as charged, but in what degree would have been left uncertain. In the latter case, however, the court could not have pronounced judgment, but it would have been necessary to impanel a jury to ascertain whether he was guilty of murder in the first or second degree, before sentence could have been pronounced against the prisoner. If the court cannot pronounce sentence against the prisoner, on his plea of guilty as charged in the indictment, we do not see how sentence can be pronounced on a verdict of guilty as charged. The verdict only finds the facts charged to be true; the confession of guilt would equally ascertain the same facts to be true; but whether the accused was guilty in the first or second degree would be left equally uncertain, whether he was found guilty by a jury, or confessed his guilt at the bar of the court. In either case, before the court can pronounce judgment, it must be ascertained by the verdict of a jury." It was said further: "It has, however, been urged with much plausibility, that the accused can not complain of the judgment in this case, inasmuch as the sentence pronounced was the lowest degree of punishment that the law affixes to murder in the second degree. The answer, however, to this argument is, that the statute peremptorily requires that the degree be ascertained by the verdict of the jury, and if this is not done, the court has no power to render judgment at all. The judge, without the intervention of a jury, can not ascertain the degree of guilt, and this must be done before judgment can be pronounced." In *Johnson v. State*, 17 Ala. 618, and in *Levison v. State*, 54 Ala. 520, there were convictions on a general verdict of guilty, the indictment charging the death to have been caused by the administration of

poison.   The court said in *Johnson's* case :   "It is now contended by the Attorney-General, that as the statute expressly makes homicide by means of poison murder in the first degree, it was not necessary in this case for the jury to ascertain the degree.   To that it may be answered, that the statute expressly requires the jury to ascertain the degree, without excepting the case of homicide by means of poison."   The like decision was made in *Levison's* case.

As the statute renders it the duty, the imperative and exclusive duty of the jury, to find the degree of murder, if upon all the evidence they were satisfied the offense in either of its degrees had been committed, it was quite an error in the court to decline or refuse to instruct them except as to the first degree.   It was a duty from which the judge was without discretion to abstain to instruct them, to say the least, as to the distinguishing elements and characteristics of each degree of murder, leaving them free to exercise and follow the dictates of their own judgments in determining which, if either, degree had been committed.   Without such instructions, the jury could not intelligently, fairly, impartially, perform the grave duty the law imposes, and by their verdict ascertain and declare the degree of the homicide. The refusal, as it was expressed, to place before the jury, and define the alternative degrees of murder, was the equivalent of a finding by the judge of the degree of the homicide, if the evidence was convincing that in either degree it had been committed.   All that was referred to the jury was the finding of the truth of the evidence, showing, or tending to show, the guilt of the accused, and the particular circumstances attending the homicide.   Within this scope their deliberations were confined.   The degree, the court finds ; a finding without the line of the duty and authority of the court, in derogation of the province of the jury, and violative of the right of the accused to an impartial trial by jury.

Kindred questions, arising under similar statutes, have received the consideration of the courts ; and there is a concurrence of opinion that instructions imperatively requiring the jury to return a verdict of guilt of either degree of murder, or which, by the expression or intimation of the opinion of the judge, infringe upon their exclusive province to ascertain and declare the

degree, are essentially erroneous. *Hopt v. Utah*, 110 U. S. 574; *Rhodes v. Commonwealth*, 48 Penn. St. 396; *Jones v. Commonwealth*, 58 Ib. 371; *Shaffner v. Commonwealth*, 72 Ib. 60; *Robbins v. State*, 8 Ohio St. 131; *Adams v. State*, 29 Ib. 412. The statutes of Utah are not distinguishable from our statutes. In *Hopt v. Utah, supra*, the trial court, in the course of its instructions to the jury, said: "That an atrocious and dastardly murder has been committed by some person is apparent, but in your deliberations you should be careful not to be influenced by any feeling." Harlan, J., after referring to the statute, said: "In view of the statutory provisions, to which the attention of the jury was called, it is clear that the observation by the court that 'an atrocious and dastardly murder had been committed by some person,' was, naturally, regarded by them as an instruction that the offense, by whomsoever committed, was murder in the first degree; whereas, it was for the jury, having been informed as to what was murder, by the law of Utah, to say whether the facts made a case of murder in the first degree or murder in the second degree. It was competent for the judge, under the statutes of Utah, to state to the jury 'all matters of law necessary for their information,' and, consequently, to inform them, what those statutes defined as murder in the first degree and murder in the second degree. * * * * But it is expressly declared by the Code of Criminal Procedure that while he may 'state the testimony and declare the law,' he 'must not charge the jury in respect to matters of fact.' The error committed was not cured by the previous declaration of the judge that, by the laws of Utah, the jury are 'the sole judges of the credibility of the witnesses and of the weight of the evidence and of the facts.' It is rather more correct to say that the effect of that observation was destroyed by the statement at the conclusion of the charge that the murder, by whomsoever committed, was an atrocious and dastardly one, and, therefore, as the jury might infer, in view of the language of the statute, was murder in the first dgree. The prisoner had the right to the judgment of the jury upon the facts, uninfluenced by any direction from the court as to the weight of the evidence." The statute of Utah, in reference to the power and duty of the court in instructing the jury, is similar to

our statute, which declares that "the court may state to the jury the law of the case, and may also state the evidence where the same is disputed, but shall not charge upon the effect of the testimony, unless requested to do so by one of the parties." Code, § 2754. The refusal to instruct as to the different degrees of murder has the properties, and was intended to have the effect of an instruction. So regarded, it was an instruction upon the effect of the evidence, given by the court of its own motion, in contravention of the statute. The statute has always been regarded as a limitation upon the common law authority of the judge, and, prior and since its enactment, the tendency and spirit of our decisions has been to distinguish closely, if not narrowly, the province and duty of the judge and of the jury. The office and duty of the jury is to respond to all questions of fact, and, within that province, they must be left to the free exercise of their own convictions. It is the duty of the judge to instruct them as to all matters of law, and it is their duty to observe and follow instructions. But it is not within the scope of his authority or duty to express opinions upon the evidence, certainly, not to urge the adoption of any particular view of it he may entertain. The numerous and oft recurring reversals of judgments, because of instructions deemed to invade the province of the jury, manifest the care and vigilance the court exercises to preserve the province of the jury, as indispensable to the due and orderly administration of the law, and to the protection of the citizen.

The essential constituents of murder in the first degree, when, as in the present case, the homicide is not perpetrated under and of the particular circumstances or conditions enumerated in the statute are that the taking of life must have been *willful, deliberate, malicious, and premeditated*. These must concur and coexist, or, whatever other offense may be committed, this offense of statutory creation is not committed, There is no possible state of facts from which the law presumes their concurrence and coexistence ; and their concurrence and coexistence is not a fact to which a witness, or any number of witnesses, can testify. It is matter of inference from all the facts and circumstances of the particular case. As the law makes no presumption in reference to it, the in-

ference cannot be drawn and announced by the judge; the jury alone can determine inferences to be drawn from the evidence. If an instruction, embodying the proposition contained in the refusal of the judge, had been requested and given at the instance of the state, the giving of it would have been a vitiating error. 1 Brick. Dig. 335, § 3.

It may be true, that in some jurisdictions, if there are different degrees of an offense, the judge discharges his whole duty if he instructs the jury as to the law in relation only to the degree, or degrees, the evidence, in his judgment, tends to prove. 1 Bish. Cr. Pr. § 981. We suppose that in these jurisdictions there are not the statutory provisions prevailing here, nor the limitations upon the authority of the judge to express or inimate opinions upon the facts, so long recognized here. The practice, and we doubt the wisdom of departure from it, has been, for the judge to instruct the jury as to every degree of homicide of which there may be a conviction under the indictment. In *Murphy v. State* 37 Ala. 142, there was a conviction of murder in the second degree, the judge having voluntarily instructed the jury as to every degree of criminal homicide except involuntary manslaughter. In *Hawes v. State* 88 Ala. 37, there was a conviction of murder in the first degree, the presiding judge having, with much care and precision, defined each degree of criminal homicide. There may be cases in which the court may abstain from the giving of instructions touching manslaughter, or may refuse, as abstract, instructions requested touching it. *De Arman v. State*, 71 Ala. 351. The refusal of abstract instructions is never erroneous. There must however be an absence of all evidence having a tendency to reduce the offense to manslaughter; and it is a grave responsibility the judge assumes in the refusal of such instructions; a responsibility which ought to be assumed only in plain cases. It is an imperative duty, when the indictment comprehends every degree of criminal homicide, if a conviction of murder is sought, for the judge to instruct the jury as to the characteristics and constituents of murder in each of its degrees, leaving them free to determine of which degree, if either, there is guilt,—less than this will not satisfy the statute.

The court, in its general charge, further said to the ju-

[Brown v. The State.]

ry : "If, under the law as the court has charged you, the jury should believe from the evidence, beyond a reasonable doubt, that the defendant is guilty of murder in the first degree, and should so find, there is still another duty for the jury to perform. In such a case the law requires the jury by their verdict to fix the punishment which the defendant shall suffer, and to say whether he shall be punished by imprisonment in the penitentiary for life, or by death. Which of these punishments shall be inflicted upon the defendant, in the event the jury, under the law as charged, shall find him guilty of murder in the first degree, is left by the law to the discretion of the jury; but, while the jury are invested by the law with this discretion, the court charges you, that it is a legal discretion, one which is a duty devolved upon the jury by the law, to be exercised as a grave and solemn duty; and the jury in so determining the punishment may consider the character of the offense, and the circumstances of its commission, if it was committed by the defendant, and all the facts connected with or attendant upon the occurrence as shown by the evidence; and should then determine from a sense of duty which of the punishments, so left to their discretion by the law, is proper in the case, and is best calculated to deter others from the commission of like offenses, and to protect the community from the perpetration of like offenses by others."

When taken in connection with the emphatic refusal of the court to instruct the jury in reference to any other degree of criminal homicide than murder in the first degree, the true interpretation of this instruction, that which it was intended the jury should adopt and by their verdict effectuate, is, that death should be affixed as the punishment, unless they found in the facts and circumstances of the case some special or peculiar reason for affixing the milder punishment of imprisonment for life in the penitentiary; and further found that it was the punishment "best calculated to deter others from committing like offenses, and to protect the community from the perpetration of like offenses by others." The instruction is not only erroneous in its construction of the statute to which it refers, but is an invasion of the province of the jury. The statute to which reference is made reads : "Any person, who is guilty of murder

6

in the first degree, must, on conviction, suffer death, or imprisonment in the penitentiary for life, at the discretion of the jury; and any person who is guilty of murder in the second degree, must, on conviction, be imprisoned in the penitentiary for not less than ten years, at the discretion of the jury," Cr. Code, § 3729. The phrase *at the discretion of the jury* is probably peculiar to our statutes, but it is not peculiar to this statute. It is found in each of the statutes prescribing the alternative punishment of death, or of imprisonment for life, or a term of years in the penitentiary. Treason, in contemplation of law the sum of all crime, is punishable by "death or imprisonment in the penitentiary for life, *at the discretion of the jury trying the same.*" Cr. Code, § 3724. Rape, in either of its forms, or the carnal knowledge of a female child under ten years of age, are each punished, *at the discretion of the jury*, by death, or imprisonment in the penitentiary for life. The false personation of the husband, by which carnal knowledge of a married woman is obtained, is punished, *at the discretion of the jury*, by death, or imprisonment in the penitentiary for not less than ten years. Cr. Code, § § 3736— 3740. Robbery is punished, *at the discretion of the jury*, by death or by imprisonment in the penitentiary for not less than five years. Cr. Code, § 3742. Arson in the first degree is punished, *at the discretion of the jury*, by death, or by imprisonment in the penitentiary for not less than ten years. Cr. Code, § 3780. These are the only crimes of which, on conviction, death is an alternative punishment; and there is but one crime of which death is the absolute, unconditional punishment, and that is murder in the first degree perpetrated by a con. vict while undergoing a sentence of imprisonment for life, which must go unpunished, or death must be the penalty. Cr. Code, § 3730.

There is no more marked characteristic of the reformation of our criminal law, wrought and intended to be wrought by the Penal Code of 1841 and its successors, then the abolition of capital punishment as the absolute, unconditional penalty, on a conviction of crime. Under pre-existing statutes, there was no division of murder into degrees; all willful murder, treason, rape, and other crimes which, as created by the statutes, do not and can not now exist, were, on conviction, punished by

death ; there was no alternative punishment.—Aik. Dig.
102, §§ 3, 4, 7.   Now, except in the instance to which
we have referred, it is not an absolute, unconditional,
but an alternative punishment; and it is never imposed
except *at the discretion of the jury*.   The Penal Code of
1841 was framed in obedience to an injunction of the
constitution of 1819, with which and other constitu-
tional provisions it was prefaced, that it was the duty
of the general assembly, as soon as circumstances would
permit, "to frame a penal code, founded on principles
of reformation, and not of vindictive justice."—Con.
1819, Art. 6, § 10.   In view of the history of our legis-
lation, we do not think it can properly be said that any
of the punishments of crime are revengeful, or pertain to
or are incited by a  spirit  of  vengeance,—they are
not of vindictive justice ; nor that they favor the  *exter-*
*mination* rather than the *reformation* of offenders.   Cap-
ital punishment is authorized ; but it is not commanded
or compelled, whatever may be the enormity of the
crime.   It is never visited except by a jury on their own
responsibility, controlled only by their own consciences,
and it is not contemplated that the suggestions of  their
consciences shall be directed by the judge presiding, or
by any human power.

The words of the statute, *at their discretion*, are  pecu-
liarly significant and expressive of the freedom in the
exercise of judgment, of the liberty of action and de-
cision, entrusted, and exclusively entrusted, to the jury.
The *discretion* they are to exercise, and exercise in obed-
ience to their own consciences only, is the choice or elec-
tion between the alternative punishments.   The discre-
tion is legal, in the sense that it is derived from and con-
ferred by law.   But it is not of the nature of judicial
discretion, which is said to be controlled by fixed legal
principles.   If such had been the discretion the law-
makers contemplated, it is but a just presumption that
judges, not juries, would have been clothed with it.
The law-makers were not unmindful of the constitution
of juries, nor of the varied considerations, thoughts,
and sentiments, which w'll govern them, the indulgence
of which there was no purpose to forbid.   It must have
been foreseen and anticipated that there would be jurors
reluctant to inflict capital punishment,—to whom
"earthly power doth seem likest God's when mercy sea-

sons justice;" that there would be some reluctant to convict on circumstantial evidence; and that not infrequently there would be some not so fully satisfied as others that the evidence of guilt reached the standard the law prescribes. These are considerations which will influence the jury in choosing between the alternative punishments; a choice they must make according to the dictates of their own judgment and consciences, and which cannot be controlled or directed by the judgments or consciences of others. The presiding judge performs his whole duty when he informs the jury that the law commits to them the selection of the punishment which must follow conviction. The idea which seems to be shadowed out, if it is not distinctly expressed, in the instruction, is, that it is the duty of the jury to impose the graver punishment, unless they find some reason in the puculiar facts of the particular case for the imposition of the milder punishment; an idea which finds no lodgment in the criminal law of the State. If under temporary excitement, or the influence of passion or prejudice, which will sometimes affect juries, a verdict should be rendered inflicting the graver punishment, when, in the dispassionate judgment of the judge, a milder punishment should have been imposed, it is his duty to apply the corrective of a new trial; but it is only in the application of that corrective that he can rightfully control or direct the discretion of the jury. My associates do not agree with me in the criticism visited upon this charge, and hold that the court did not err in giving the instruction to the jury.

The court further instructed the jury: "I charge you, gentlemen of the jury, that the officer to whom the warrant introduced in evidence was directed, and the persons called by him to his aid, were called upon to look for their authority to execute the same only to the warrant, and not to the affidavit preceding the warrant; and I further charge you that the said warrant here introduced in evidence is on its face a good and valid warrant, and was sufficient for the arrest of the defendant, Bill Brown; and if the jury believe from the evidence, beyond a reasonable doubt, that the defendant killed James Foster, who had been summoned by the officer to whom the warrant was directed to assist in arresting the defendant, to escape arrest under said warrant, then,

I charge you, that the defendant is without excuse, and is guilty of murder in the first degree."

In the consideration of this instruction, the primary inquiry is as to the validity of the paper purporting to be a warrant of arrest, to which the instruction refers. It purports to have been issued by a justice of the peace,—it is properly entitled and directed, and reads: "Proof having been made before me that the offense of petit larceny has been committed, and that Will Brown is accused thereof, you are therefore commanded to arrest Will Brown, and bring him before me, forthwith. [Signed] G. M. Harraway, J. P. April 6th, 1895." On this paper is the following writing: "I hereby deputize John Moody to execute the within warrant. [Signed] G. M. Harraway, J. P." Preceding this instrument on the same sheet of paper, is a writing in these words:

The State of Alabama ⎱ Personally appeared before me, Lauderdale County, ⎰ G. M. Harraway, a justice of the peace in and for said State and county, Joe Walker, who being by me duly sworn, deposeth and saith that on or about the 18th of March, 1895, that Will Brown did enter the said Walker's premises and maliciously carry away chickens to the value of $1.20, this the 6th day of April, 1895.                    [Signed]    his
                                                    Joe x Walker"
                                                         mark.

"Sworn and subscribed to before me, this the 6th day of April, 1885.        [Signed] G. M. Harraway, J. P."

In the administration of the criminal law of the State, justices of the peace, within their respective counties, are clothed with a dual jurisdiction. The one is of proceedings preliminary to the intervention of the courts of final jurisdiction, extends to all offenses whether of felony or misdemeanor, and is usually and properly termed that of a committing magistrate. The jurisdiction is conferred, regulated, and the mode of procedure prescribed by Chapter 3, Tutle 3, Part 5, Cr. Code, §§ 4255–98. Distinguishable from this jurisdiction, justices have a jurisdiction concurrent with that of the county courts, which may properly be termed final, of enumerated misdemeanors, of which larceny is one, when the subject of the crime does not exceed ten dollars.—Cr. Code, § 4235. The form of a warrant of arrest is pre-

scribed, whether the one or the other jurisdiction is being exercised.—Cr. Code, §§ 4205–4259. Each corresponds to the definition or description of the warrant given by section 4259 : ''A warrant of arrest is an order in writing, issued and signed by a magistrate, stating the substance of the complaint, directed to a proper officer, and commanding him to arrest the defendant, and such warrant must designate the name of the defendant, if known, but if it states that the name is unknown to the magistrate, then no name need be inserted. It must also state the offense, either by name, or so that it can be clearly inferred; the county in which it was issued must appear from some part of the warrant, and the warrant must be signed by the magistrate, with his name and initials of office, or the same must in some way appear from the warrant. It must be directed, 'To any lawful officer of the State,' but if executed by any lawful officer, having authority to execute it, it is valid without regard to the direction.'' The forms are brief, clear and concise in expression, and departure from them is to be regretted ; if the facts exist which authorize the issue of a warrant, there can be no reason or necessity for the departure.

It is not clear, from the words of the paper in question, which of the jurisdictions conferred by law the magistrate was exercising, or intended to exercise; whether the paper was issued in the capacity and jurisdiction of a committing magistrate, or in the capacity of a justice having final jurisdiction. The offense the defendant is required to answer is designated as *petit larceny* ; but whether the subject was more or less than ten dollars is not stated. Whether a complaint on oath, which alone could call into rightful exercise the jurisdiction of the justice, preceded or attended its issue, is not stated with distinctness. The statement is, that *proof* having been made ; but by whom or in what form is not stated. These, to say the least of them, are informalities and defects which ought not to creep into process, directed against the person of the citizen, and which is intended as a restraint upon his liberty. He has the right to know by whom he is accused, of what he is accused, whether the accusation has been preferred as the law requires, and what is the jurisdiction the magistrate or tribunal is exercising. But we are

not of opinion they render the paper void as a warrant of arrest, justifying the officer to whom it was directed in refusing obedience to its mandate. A high degree of accuracy in preceedings of this character, by and before justices of the peace, when drawn in question collaterally, has not been exacted.—*Crosby v. Hawthorn*, 25 Ala. 221; *Heard v. Harris*, 68 Ala. 43. In either of the jurisdictions with which the justice is clothed, he could issue a warrant of arrest for the designated offense; and while, in the exercise of either jurisdiction, a warrant should not issue without a verified complaint, or a proper affidavit, the officer to whom it is directed is not under the duty of inquiring whether such complaint or affidavit has been made. The presumption on which he was bound to proceed was that the *proof* taken by the magistrate was properly and legally taken.

The affidavit of Walker, as argued by the counsel for the appellant, states no violation of the criminal law. The entry on the premises of another, and *maliciously*, not *felonously*, carrying away personal property, is a trespass, it is not a crime; and it gave the justice no authority to issue a warrant of arrest. If the warrant had recited the accusation contained in the affidavit, as contained in the affidavit, as the cause of arrest, it would have been a nullity, to which no officer, without becoming a trespasser, could have yielded obedience, and an arrest of the defendant would have been unlawful imprisonment.—*Duckworth v. Johnston*, 7 Ala. 578; *Crumpton v. Newman*, 12 Ala. 199; *Noles v. State*, 24 Ala. 672. The warrant, if referred to this affidavit, as it would probably be in a controversy between the defendant and Walker, or the justice, would be a nullity. But there is a well known distinction found in the books between the case of parties illegally obtaining, or of justices illegally issuing, and of ministerial officers charged with the duty of executing process. As a general proposition, it may be stated that the officer is justified in the execution of the process when it proceeds from a court or magistrate having jurisdiction to issue it, unless invalidity appears on its face. He is not bound, and has not authority, to inquire into the regularity or legality in the proceedings prior to its issue.— *State v. Weed*, 21 N. H. 262; *Savacol v. Boughton*, 5

[Brown v. The State.]

Wend. 170; (s. c. 21 Am. Dec. 181, and Freeman's note. The rule is stated by Sir Michael Foster, and, as has been said, "doubtless remains unchanged to this day:" "I have said above by way of caution, *if the process be legal*; but I would not be understood to mean anything more than, *provided the process, be it a writ or warrant, be not defective in the frame of it, and issue in the ordinary course of justice, from a court or magistrate having jurisdiction in the case.* There may have been error or irregularity in the proceedings previous to the issuing of the process; but if the sheriff or other minister of justice be killed in the execution of it, this will be murder, for the officer to whom it is directed must, at his peril, pay obedience to it. And in the case of a warrant from a justice of the peace, *in a matter wherein he hath jurisdiction*, the person executing the warrant is in like manner under the special protection of the law; though such warrant may have been obtained by gross imposition before the magistrate, and by false information touching the matters suggested in it."—Cases on Self Defense, 719. In 1 East, P. C. § 78, the doctrine is stated: "If the warrant be legal in the frame of it, and issue in the ordinary course of justice from a court or person having jurisdiction in the case, it is sufficient. No error or irregularity in the previous proceedings will affect it; or excuse the party killing the officer in execution of it from the guilt of murder."

The person deputized as constable to execute the warrant, and the persons called to his assistance, could look for authority and justification to the warrant only,—it was not their province to inquire into the connection it may have had with the affidavit: nor, if connected, whether it was regularly or irregularly issued. This is the proposition embodied in the instruction, and to this extent we deem the instruction free from error. The several instructions requested by the defendant affirm the converse proposition, or are founded on the supposed invalidity of the warrant, and were properly refused.

The instruction, in its remaining phase, is erroneous. The facts predicated do not constitute murder in the first degree, and, unless connected with other facts to which the instruction makes no reference, may not constitute murder in the second degree. Ministerial officers having authority to arrest or imprison for breaches of the peace,

or for other offenses, and the persons they may call to their assistance, are, while in the execution of the authority, upon the highest considerations of public policy, deemed under the peculiar protection of the law. And if, while on a proper occasion, and in a proper manner, they are proceeding in the execution of the authority, they be resisted and killed, the homicide is murder in all who participate in its perpetration, if the intent be to kill, or to do grievous bodily harm. 1 Whart. Am. Cr. Law, (9th ed.) § 413; 1 Russell on Crimes, 732, 735. If the homicide is not attended with evidence of express malice, the malice prepense or aforethought, the ingredient of murder, is implied from the intentional and unlawful taking of human life. 1 East, 295; 3 Green Ev. § 123; Whart. Homicide, § 226; 1 Archbold Cr. Pl. & Pr. (Pomeroy's ed.) 678. Whenever human life is intentionally taken without the authority of law, malice is presumed or implied, unless the evidence, the *res gestæ*, repels the presumption or implication. More than presumed or implied malice is essential to constitute murder in the first degree. There must be conjoined with malice, *willfulness, deliberation,* and *premeditation;* or the crime must have been perpetrated under some one of the categories enumerated in the statute. Whether there is the concurrence and coexistence of these essential constituents, is, of necessity, dependent on the facts and circumstances of the particular case; and, as we have said, the determination of the fact lies within the exclusive province of the jury, under proper instructions from the court. When no more appears—and the instruction cannot be construed as predicating more—than an unlawful and intentional killing, without excuse or mitigation, the homicide cannot be deemed more than murder in the second degree. *Fields v. State,* 52 Ala. 348; 2 Bish. Cr. Proc. § 603; 1 Whart. Am. Cr. Law, (9th ed.) § 392, and authorities cited.

In all cases of the killing of an officer, or of an assistant, in resistance of an arrest, a material inquiry, in determining the degree of the homicide, is, whether the party resisting had knowledge or notice of official character and of presence for the exercise of official authority. If there is not such knowledge or notice, the homicide cannot be more than manslaughter, unless the re-

sistance was "in enormous disproportion to the threatened injury." *Noles v. State*, 26 Ala. 31; 1 Russell on Crimes, 835; 1 Whart. Am. Cr. Law, (9th ed.) § 413; *Com. v. Drew*, Cases on Self Defense, 718; *Croom v. State*, 85 Ga. 718; (s. c. 21 Am. St. Rep. 179); *Roberts v. State*, 14 Mo. 138; (s. c. 55 Am. Dec. 97). There may be a presumption that the regularly commissioned sheriff is known to all the inhabitants or residents of the county; and that the regularly commissioned constable is known to all the inhabitants or residents of the precinct of his election or appointment. The presumption founded on the publicity and notoriety of official relation cannot be indulged if the officer making the arrest is, as in the present case, of special deputation,—an officer for a particular occasion only, whose authority is exhausted and relation terminated when the mandate of the process issuing to him is executed. Such an officer is bound to give the party he seeks to arrest some notification of his authority and purpose. 1 East, 312; 2 Roscoe Cr. Ev. (8th ed.) 998. The notice need not be in any particular form of words; all that is necessary is that the party be informed that he is required by one having the authority of the law to yield submission to the authority. 1 Russell on Crimes, 839–40; notes to *Hawkins v. Commonwealth*, 61 Am. Dec. 158.

The instruction makes no allusion to this question, ignores it, and yet it arises naturally from the evidence, and should have been submitted to the consideration of the jury. The arrest was attempted in the night time, and the homicide committed in resistance of it, and while the defendant was in the dwelling of his father-in-law. The announcement of official presence, for official purposes, was made to an old woman, an inmate of the family, who hesitated to open the door of the dwelling. It was made by the deceased, Foster, whom Moody, the deputized constable, had called to his assistance. According to the evidence of Walker, Foster said to the old woman: "We are officers, and want to arrest Bill Brown, and have a warrant for his arrest." According to the evidence of Moody, "Foster told her he was an officer and wanted Bill Brown." It will be observed, if the announcement was that stated by Moody, there was no notification to the defendant that a warrant had issued for his arrest, and that the party had it present for

exhibition to him, if required. The statute authorizes the execution of a warrant of arrest on any day and at any time, but it requires the officer at the time of execution to inform the defendant of his authority; and, if required, to show the warrant. Cr. Code, § 4261. It is not the duty of the citizen to submit to any other than a lawful arrest. It has been said, the duty "is found in the law side by side with the right of resistance to an unlawful one; and it is quite as important that no one should be unlawfully taken as that every one lawfully accused should be made to answer." *Drennan v. People,* 10 Mich. 169. The requirements of the statute are drawn from and in affirmation of the common law. They are ample to secure the execution of and submission to legal process; but they are equally intended to protect the citizen from unlawful interference with his personal liberty. It is not intended that he shall yield his person and liberty to the dominion of even a known public officer, certainly not to one unknown, upon his mere demand, who gives no information of his authority. If this were not true, no man would be safe from invasions of his personal liberty, and unlawful arrests would be made effectual. Whether the announcement or notification of official presence and authority was that testified to by Moody, or that testified to by Walker, should have been submitted to the consideration and determination of the jury. The latter was sufficient, under ordinary circumstances, to require submission on the part of the defendant,—the former was not, and if the resistance of arrest was not in great disproportion to the threatened injury, the homicide would not rise above manslaughter. *Davis v. State,* 79 Ga. 787.

There are other phases of the case which should be submitted to the consideration and determination of the jury, and other grave questions which are suggested by the evidence, and which may arise on another trial. They are not now presented, and an expression of opinion in reference to them would not now be proper.

For the errors pointed out, the judgment must be reversed, and the cause remanded. The defendant must remain in custody until discharged by due course of law.