# Murkison *v.* The State.

*Assault and Battery.*

(Decided June 4, 1914.   65 South. 684.)

1. *Sheriffs and Constables; Appointment of Special Constable; Number.*—Under sections 3331, and 4642, subdivisions 3, Code 1907, more than one special constable may be appointed in case of emergency whether or not there be a vacancy in the office.

2. *Same; Determining Emergency.*—Whether there is an emergency under sections 3331 and 4642, subdivision 3, Code 1907, is a question of which the justice of the peace is the exclusive judge, and his determination thereof is not subject to a review or revision by any other court.

[Murkison v. The State.]

3. *Assault and Battery; Arresting; Deadly Weapon.*—An officer has no right to do a misdemeanant bodily harm to accomplish his arrest, and having shot him, is guilty of an assault with a weapon, if he did it purposely and not in self-defense.

4. *Same; Carelessness.*—Although one shoots another accidentally, if it is the result of gross carelessness in handling the weapon, such one is guilty of an assault with a weapon.

5. *Same; Right to Enter House; Warrant.*—A charge asserting that if defendant had in his possession a warrant for the arrest of one of the men in the house where the shooting occurred, and had been specially deputized to execute it by C., a justice of the peace, he had a right to enter the house does not hypothesize the necessary facts that in deputizing him C. acted in his official capacity, and that defendant informed the persons in the house of his authority, and consequently the charge was bad.

6. *Charge of Court; Reasonable Doubt.*—A charge asserting that the jury should not convict without a reasonable belief of defendant's guilt, and even such reasonable belief might not be sufficiently shown to exclude a reasonable doubt to the contrary, is patently faulty.

APPEAL from Montgomery City Court.

Heard before Hon. ARMSTEAD BROWN.

J. F. Murkison was convicted of an assault with a weapon, and appeals. Reversed and remanded.

The following charges were refused to defendant:

(10) The jury should not convict defendant without a reasonable belief of his guilt, and even such reasonable belief might not be sufficiently shown to exclude a reasonable doubt to the contrary.

(5) The court charges the jury that, if you believe from the evidence in this case that defendant had in his possession a warrant for the arrest of a man in the house in which the shooting occurred, and that he was deputized specially by Carter, then he had a perfect right to enter the house.

L. A. SANDERSON, for appellant. The court erred in refusing to give charges 5 and 10.—*Elmore v. State,* 92 Ala. 51. Counsel discuss the authority of the justice of the peace to appoint a special constable with the insistence that the authority existed, and that the assault was

committed if at all, while defendant was acting in his
official capacity, and that therefore the court erred in its
oral charge.—Sec. 3331, 4642, subdivision 3, Code 1907,
and authorities there cited. Counsel also discuss the
remarks of the solicitor objected to, with citation of au-
thority to support his contention that they were erro-
neously allowed, but in view of the opinion it is not
deemed necessary to here set them out.

R. C. Brickell, Attorney General, and T. H. Seay,
Assistant Attorney General, for the State.

THOMAS, J.—The defendant was convicted of an as-
sault and battery with a weapon. The evidence for the
state tended to show, in substance, that on the night and
at the time of the assault Ed Tolliver, the person as-
saulted, was at the home of Ben Elmore, where he and
others were in a room engaged in a crap game; that
while they were so engaged the defendant, accompanied
by one Naftel and one Keith, came there, the two latter
going to the back door of the house, and the defendant
to the front door, through which he (defendant) en-
tered into the room where the parties were engaged in
playing the game mentioned, and whereupon he told
them to "halt" or "hold up and don't run," and where-
upon, as Ed Tolliver "jumped around," defendant shot
him with a pistol. The evidence for the defendant tend-
ed to show that warrants had been issued for the arrest
of two of the persons engaged in that crap game by B.
B. Carter, a justice of the peace of the county, for pre-
vious misdemeanors, and that these warrants had been
placed in defendant's hands by such Carter as such jus-
tice of the peace, who thereupon deputized the defend-
ant, as a special constable, to execute each of them; that,
armed wtih these warrants, and having heard that Curly

Smith and Frank Newsome, two of the parties wanted, were down at Ben Elmore's house, he (defendant) in company with Keith and Naftel, whom he called upon to assist him, went down to Ben Elmore's house, and, on peeping through the window, saw said Smith and Newsome and others, including Ed Tolliver, the person who was shot, in the room playing craps; that Naftel and Keith went to the rear of the house to guard the back door, and defendant went to the front door, and through it entered the room and, informing the parties of his official character, called upon them to consider themselves under arrest, and that just as he did so some one of them blew out the light, and some one made for him (defendant) in the darkness, and that in the general scuffle resulting therefrom his pistol, which was in his hand, accidentally went off, and that it was discovered when the lamp was again lighted that Ed Tolliver, the person alleged to have been assaulted, was wounded in the hip. The evidence further tended to show that the office of constable was vacant in that beat or precinct on account of the death of the incumbent, and that Naftel, one of the said persons mentioned as accompanying defendant, had been appointed by said Carter, the said justice of the peace in the precinct, to act as special constable with general authority during the vacancy of the office, and that defendant's authority as a special constable was to execute certain warrants placed in his hands, including the two for the two persons before named that were in the house that defendant entered, and which he was in at the time of the shooting mentioned.

The court, in its oral charge to the jury, said, among other things:

"I charge you that it is the law that there can be only one special constable appointed by a justice of the peace of a beat."

[Murkison v. The State.]

The solicitor, in his argument to the jury, said, among other things:

"The appointment of defendant as special constable by Carter, giving him authority to execute the warrant issued for the man Newsome, was illegal and void under the law."

The defendant reserved an exception both to the quoted charge of the court and to its action in overruling his objection to the quoted remarks of the solicitor and in declining to exclude those remarks from the jury. On the subject of the power and authority of a justice of the peace to appoint special constables the Civil Code thus provides:

Section 4642, subd. 3: "Every justice is a conservator of the peace within his county, and has authority therein, * * * when the office of constable in his precinct is vacant, *or in other cases of emergency,* to appoint a person to act in his place, without giving bond and surety, in the execution of all process, except the collection of executions."

Section 3331: "When the office of constable is vacant, or the constable is interested in a cause pending before a justice of the peace or notary public exercising the jurisdiction of a justice of the peace, *or in case of emergency,* the justice or notary must appoint a suitable person to act as constable, without bond; and the person so appointed must perform the same duties and is liable to the same pains and penalties as constables; but such special constable is not authorized to levy or collect executions."

Under these statutory provisions, it is clear to our minds that the justice has authority in any "case of emergency" to appoint a person with specific authority to execute any particular or specially designated process of the court, except a fieri facias or execution, and this

regardless of whether the office of constable is vacant or not, and, even if vacant, regardless of whether the justice has or not already appointed a special constable, with general authority, during the vacancy, to execute all process, except executions.—*Brown v. State,* 109 Ala. 90, 20 South. 103. In other words, the statute contemplates that in justice courts emergencies may arise that will, in the prompt and proper administration of the law, create the necessity for two or more constables at the same time. When the office is not vacant, one of these constables is, of course, the regular constable, who, by virtue of his office, has general authority to execute any and all process of the justice court, and the others are such as the justice may "in case of emergency" appoint to execute, respectively, some particular process of the court. Their authority comes from the appointment of the court, and is special, being limited to the execution of the designated process, which in no case can be an execution, and ends with the execution of such process, unless sooner withdrawn.—*Brown v. State, supra.* When, on the other hand, the office of constable is vacant, the justice may, under the statute and on account of such vacancy, appoint a special constable with general authority to discharge during the vacancy all the duties of the office of constable, including the execution of all process, except executions, and during his incumbency the justice may, in any "case of emergency," as during the incumbency of the regular constable, appoint one or more, as emergency may demand, special constables, with limited authority to execute any specifically named process, except an execution.

The result is that, even when the office of constable is vacant, it is possible to have by appointment of the justice two or more legally constituted special constables at the same time, one with general authority, and the oth-

ers with special authority. The emergency which will justify the appointment of special constables with special authority is one of which the justice making the appointment is the exclusive judge, and his determination thereon is not the subject of review or revision by any other court.—*Noles v. State,* 24 Ala. 672; *Floyd v. State,* 79 Ala. 39; *Parish v. State,* 130 Ala. 94, 30 South. 474.

It follows from what we have said that we are of opinion that the court was in error in that part of its oral charge before quoted, and in error in not sustaining the defendant's objection to the before-quoted remarks of the solicitor.

The other remarks of the solicitor which were objected and excepted to, and of which appellant complains in brief, are not likely to be made on another trial, and need not, therefore, claim our consideration. The rules of law applicable thereto have often been so frequently and fully declared as to furnish clear guidance in this particular to both the court and the solicitor.—*McAdory v. State,* 62 Ala. 163; *Cross v. State,* 68 Ala. 476; and the numerous cases cited under this case in West Publishing Company's annotated edition of Alabama Reports.

Charges 1 and 2 were the affirmative charges. It appears from what we have already set forth as to the tendencies of the state's evidence that each of these charges was properly refused. If defendant shot Ed Tolliver purposely, and not in self-defense, he is guilty, although he may, if his evidence be believed, have had a right in the house and a right to make the arrest; since no officer has the right to take life in order to accomplish the arrest of a misdemeanant or to do him serious bodily harm.—*Handley v. State,* 96 Ala. 50, 11 South. 322, 38 Am. St. Rep. 81. And, although the shooting was acci-

dental, if it was the result of gross carelessness on the part of defendant in handling the pistol, he would still be guilty.—*Bynum v. State,* 8 Ala. App. 79, 62 South. 983.

Charge 10 is so patently faulty as to require no argument to demonstrate it.

Charge 5 asserts, in effect, that if defendant had in his possession a warrant for the arrest of one of the men in the house where the shooting occurred, and had been deputized specially by B. B. Carter to execute it, he had a perfect right to enter the house. He would not have such right under the warrant, unless Carter, in deputizing him, acted in his official capacity as justice of the peace, which the charge fails to hypothesize, and unless even if Carter had so acted, defendant informed the persons of his authority, which the charge also fails to hypothesize.—*Brown v. State,* 109 Ala. 90, 20 South. 103.

Under some circumstances a private person has the right to arrest for a misdemeanor committed in his presence.—Code, § 6273. Whether, however, the law goes to the extent of countenancing "meddling"—that is, whether it authorizes a private person to enter the private house of another for the purpose of arresting for a mere misdemeanor being committed therein with the consent of the owner, and which does not disturb the public, and which such private person has detected by peeping through the window of that house—is a question we need not consider, since defendant makes no claim that he entered the house as a private person, or that his purpose in entering it was to arrest for the misdemeanor then and there, to his knowledge, being committed, but his only claim is that he went to and entered the house as an officer by special appointment to execute a warrant issued for an offense previously committed, and

[Graham v. The State.]

that his purpose in entering was to arrest for that offense under that warrant, and that he informed the persons in the house of his official authority.

For the error hereinbefore pointed out, the judgment of conviction is reversed, and the cause remanded.

Reversed and remanded.