# Cunningham & Son v. Baker, Peterson & Co.

## Garnishment Suit.

1. *Garnishment; what demands subject thereto.*—In order to authorize a garnishment to reach and subject to the payment of the plaintiff's judgment the money or effects of, or debts owing to, a defendant, in the possession or under the control of, or due from, a third person, the liability of the garnishee must originate in or be dependent upon a contract, express or implied, and such as a defendant debtor suing in his own name could recover in an action *ex contractu;* and an unliquidated demand, having in it no element of a contract, or unliquidated damages, or a right of action for a tort, is not the subject of garnishment.

2. *Arrest; mode provided by statute must be observed.*—When the mat-

[Cunningham & Son v. Baker, Peterson & Co.]

ter of apprehension and detention of a criminal is regulated by stat-ute, the statutory mode of procedure must be observed, and arrest and detention otherwise is illegal.

3. *Same; when officer can arrest for crime committed in another State.* If an officer, having authority to make arrests can, without warrant, arrest a person in this State whom he has reasonable cause to believe committed a felony in another State, to support the exercise of such authority there must be reasonable cause to believe that the crime supposed to have been committed is a felony, not a less offense, under the laws of the State in which it was committed, that the person ar-rested committed it, and that he is a fugitive from the justice of that State.

4 *Same; what reasonable cause to believe a commission of crime justifies arrest.*—An officer can not justify an arrest without a warrant, upon the ground that he had reasonable cause to believe the person ar-rested had committed a felony, unless he has information of facts, de-rived from those reasonably presumed to know them, which, if sub-mitted to a judge or magistrate having jurisdiction, would require the issuance of a warrant of arrest, and the detention of the accused to await further examination.

5. *Same; search unlawful if arrest unlawful; property so obtained not subject to garnishment.*—Where the defendant in an attachment suit is unlawfully arrested, the search of such person by the officer making the arrest is unlawful; and money and effects obtained from the de-fendant by such unlawful search are not subject to garnishment in the possession of the officer who made the arrest and search.

6. *Same; unlawful under facts of the present case.*—Where the only inducement or occasion for the arrest of two persons by a police offi-cer of a city in this State is a telegram addressed to such officer from the chief of police of a city in another State, requesting him to see the conductor of an approaching train and "keep track of" the persons subsequently arrested, describing them as "swindling commission merchants," such arrest is unauthorized and illegal; such telegram furnishing no reasonable ground to believe the persons arrested, or either of them, had committed, or intended to commit, any offense justifying their arrest

7. *Garnishment; money or effects taken by officer from person unlaw-fully arrested not subject to garnishment.*—Where a police officer, unlaw-fully arrests a person and takes possession of money or effects found on his person, such money or effects are not subject to garnishment in the hands of such officer by a creditor of the person arrested; there being no contractual relation between the officer and such person.

8. *Same; same.*—Where an officer, who has unlawfully arrested a person and taken possession of money found on him, is garnished by a creditor of the person arrested, the fact that the plaintiff in the at-tachment suit had no agency in or connection with the tort by which the garnishee obtained possession of the money or effects of the per-

11

son arrested, does not give the plaintiff the right to subject such property in the hands of the garnished officer to the payment of his debts.

APPEAL from the Circuit Court of Montgomery.
Tried before the Hon. JOHN R. TYSON.

The appellants, Cunningham & Sons, brought an action of assumpsit against the appellees, Baker, Peterson & Co. This suit was inststuted by suing out a writ of attachment against defandants, which was executed by the service of a sheriff's garnishment upon A. Gerald, the chief of police of the city of Montgomery, who had previously arrested the defendants, Frank Baker and James Peterson, who had been engaged in business in the city of New Orleans under the firm name of Baker, Peterson & Co. At the term of the circuit court of Montgomery county, to which the attachment was returnable, the defendants moved to have an order issued to the plaintiffs, Cunningham & Sons, requiring them to show cause, if any they had, why said writ of attachment and its levy by sheriff's garnishment should not be vacated, annulled, discharged and quashed. This motion sets up, in avoidance of the attachment by levy of the garnishment and the proceedings thereon, the fact that the defendants were illegally arrested, and their property was taken from them through persons by unlawful force—by a trespass—and that, therefore, the said property was not liable to said attachment, and the levy was void. This contention is based upon the allegations of facts contained in the said motion, which are substantially as follows: The defendants, Frank Baker and James Peterson, came to the city of Montgomery by railroad, each of them having upon his person certain money, clothing and other personal property and railroad checks for his baggage. Before the arrival of the defendants, the chief of police of Montgomery had received a telegram from the chief of police of New Orleans, La., to the following effect: "See conductor of Louisville & Nashville train to arrive this evening, and keep track of Baker and Peterson, swindling commission merchants." When defendants arrived, they were arrested on the train, and taken from the train to the police station, where each of them was searched, the money and

and effects each had upon his person were taken therefrom, the hand baggage of each were taken from him.,
and the checks for his baggage taken from his pockets,
the said baggage stopped and brought to police headquarters; all being taken possession of by A. Gerald,
chief of police. At the time of said search, there was
no warrant for their arrest, no *capias* or other process
charging them with any criminal offense against the city
of Montgomery, the State of Alabama, or any other
State, or the United States, in the hands of the arresting
officers, or the chief of police, nor was there any requisition upon, nor warrant by, the Governor of Alabama on
demand of any other State, nor did said authorities ever
get any process of any kind, during the time of their detention in the city of Montgomery. After said arrest
and search, the attachment in this case was sued out and
executed by the service of a sheriff's writ of garnishment
upon Gerald, chief of police.

The plaintiffs demurred to this motion, on the grounds,
that there are no facts averred in said motion which will
authorize or justify the dissolution of said attachment;
and that it is not averred in said motion that the plaintiffs authorized or connived at the arrest of defendants,
or that they participated in or had any connection with
said arrest. This demurrer was overruled, and thereupon the plaintiffs filed their answer to the motion of the
defendants, alleging as a cause that led up to the arrest
of the defendants substantially the following facts:   A
short time prior to the issuance of the attachment in
this cause, the defendants therein went to the city of
New Orleans, La., as strangers without any visible means,
and immediately began to advertise themselves very extensively to the public in places distant from the said
city as dealers in country produce, offering, in some instances, to receive and sell on commission, and in others,
to buy directly from the shippers, and offering extra
prices. In this manner they obtained large quantities
of such goods from appellants and others, in various
portions of Alabama, Florida, Mississippi, Louisiana,
Tennessee and Texas, without any intention on their
part of paying or accounting to the shippers thereof for
the same; and nearly all of which goods they sold at any
price they could get for them, appropriating the proceeds
thereof to their own use, and paid the shippers nothing.
After having thus obtained and disposed of said goods

and delayed the payment therefor as long as possible, they suddenly disappeared from said city of New Orleans under very suspicious circumstances, and boarded a train on the Louisville & Nashville Railroad, at a small station a few miles this side of New Orleans, en route to Montgomery, Ala. On said train, at the same time there was a passenger, who, having heard of the conduct of said defendants while in New Orleans and observing their suspicious conduct at the time of boarding said train, wired the chief of police of New Orleans of the same. The chief of police, on obtaining information in reference to the matter, began communication by wire with the chief of police of Montgomery, and sent the telegram copied above, which led to the arrest of defendants at the latter place, where they had separated, having taken trains to different places. Shortly thereafter they were delivered to the officers of the law from New Orleans, who returned to that city with them, where they were afterwards indicted for frauds growing out of said business, after which they were released on bond and then left for parts unknown. While said defendants were under arrest in Montgomery, they were taken to the police headquarters and searched by certain police officers, and a portion of the property in question taken from their persons, and a portion was taken out of a trunk belonging to them, received by said officers from the railroad company, and all of said property was delivered by said officers to the chief of police, A. Gerald, and while the same was so in his possession, the appellants, without knowledge or information as to the manner of said arrest, or in any way aiding, procuring or directing the same, sued out attachments and had the same executed by service of sheriff's garnishment on said Gerald, and due notice given the defendants thereof. It was also averred in said answer, ''that the police officers in making said arrests acted in good faith, honestly believing that the said Baker and Peterson had violated the laws of the State of Louisiana as aforesaid, and were fleeing from said State to avoid arrest; that the chief of police of Montgomery was personally acquainted with the chief or superintendent of police of New Orleans, and knew him to be reliable; and that said arrests were made and said property obtained from them for the purpose of preventing the escape of said Baker and Peterson, and

honestly believing that the·said property might be useful as evidence against them, the said Baker and Peterson, upon a trial of the charges against them growing out of their said fraudulent dealings.''

The defendants demurred to this answer of the plaintiffs on the following grounds : 1st. It is shown in said answer that, at the time of the arrest of the defendants by the police authorities of the city of Montgomery, they were guilty of no offense justifying their arrest under the laws of the State of Alabama.  2d. It is shown by said answer that if any violation of law was committed by the defendants it was committed in a foreign State, and that no requisition had been made upon, and no warrant of arrest issued by, the Governor of this State, authorizing their arrest.  3d. The said answer undertakes to set up in justification of the arrest of defendants in this State, without process, the conduct of defendants in a foreign State.  4th. The answer shows that the levy of attachment by service of a sheriff's garnishment was unlawful and illegal.  5th. The answer is not sufficient in law. This demurrer was sustained, and the plaintiffs declining to plead further the motion was granted, ''and the attachment executed by service of sheriff's garnishment on A. Gerald, as chief of police, dissolved and quashed, and said cause dismissed.''

The plaintiffs appeal, and assign as error the overruling of their demurrer to the defendant's motion, and the sustaining of the defendants' demurrer to their answer, and the judgment rendered.

FARNHAM & CRUM, for appellants.—1. An officer may arrest without a warrant any person whom he suspects to be guilty of a felony, whether he acts upon his own knowledge, or upon facts communicated to him by others. *Ex parte Thomas*, 100 Ala. 101; *Holley v. Mix*, 20 Amer. Dec. 702; 1 Amer. & Eng. Encyc. of Law, 733; Code of 1886, §§ 4260, 4262; *Reifsnyder v. Lee*, 24 Amer. Rep. 733; *Closson v. Morrison*, 93 Amer. Dec. 459.  The right to arrest a fugitive from justice without a warrant is favored by the law.—Clark's Manual of Criminal Law, § 2044.

2.  If the attaching creditor had no connection with and did not authorize the arrest of defendants, then they should not be deprived of this right to subject the prop-

erty to the payment of this demand, by the act of the officer making the arrest.—Waples on Attachment, 161.

LOMAX & LIGON, *contra*—The defendants being unlawfully arrested and searched, the property obtained as the result of such search is not liable to garnishment in the hands of the officer.—*Ex parte Hurn*, 92 Ala. 102 ; *Commercial Bank v. McLeod*, 65 Iowa 655, s. c. 54 Amer. Rep. 36. The property should have been restored to the defendants when their custody was surrendered by the chief of police.—*Com. Bank v. McLeod*, 65 Iowa 655 ; 1 Amer. & Eng. Encyc. of Law, 934, and authorities there cited ; *McReady v. Rogers*, 93 Amer. Dec. 333, s. c. 1 Neb. 124.

2. The trial court correctly sustained the demurrer of the appellees to the answer of the appellants to the motion to dissolve the garnishment. There were several grounds of demurrer, and each was sustained generally. If either ground was sufficient, there was no error in the ruling.—*Guilford v. Kendall*, 42 Ala. 651 ; *Werth v. M. L. & Imp. Co.*, 89 Ala. 373 ; *Baker v. Graves*, 101 Ala. 247.

3. It is conceded by the answer of appellants that the arrests in this case and the search which followed, and by means of which the garnishee got the property, were made upon the authority of the telegram asking that the police keep track of the defendants. The officers in making that arrest were guilty of trespass. There was no warrant or other process issued, and no offense charged at the time of the arrest and search and seizure of appellees' property ; the officer making the arrest, consequently, could not indulge the presumption that the property taken from the appellees was "'connected with the offense charged, or could be used as evidence on the trial," there being no offense committed and no trial to take place. Without these prerequisites, the search and seizure constituted a traspass. The levy of the attachment, following a search and seizure which was a trespass, was necessarily unlawful and invalid. And the answer showing these facts upon its face, it must be held that the demurrer to it was well taken.—*Ex parte Hurn*, 92 Ala. 102 ; *Bank v. McLeod*, 65 Iowa 655; *Spalding v. Preston*, 21 Vt. 9.

4. The motion for a rule to show cause why the attachment should not be dissolved, was the proper and

only remedy of appellees in this case, where the property was not liable to attachment and the levy was, therefore, void.—*Rich v. Thornton*, 69 Ala. 473; *Johnston v. Hannah*, 66 Ala. 127; *Adair v. Stone*, 81 Ala. 113; *Steadham v. Parrish*, 93 Ala. 465; *Winslow v. Bracken*, 57 Ala. 368; *Jones v. Crews*, 64 Ala. 368. The line of decisions followed in *Cross v. Spillman*, 93 Ala. 170, do not militate against this view. The garnishments in those cases were either in aid of pending suit, or on a judgment, while here, the garnishment was the service of an original attachment—the essential prerequisite, in the absence of a direct levy upon property, to the commencement of the action and the bringing of the parties into court. Surely, in such case, the defendant should not be required to keep silent while his property is being disposed of by a court whose jurisdiction thereof has never been fixed by a legal service.—1 Wade on Attachment, § 286; 2 Wade on Attachment, § 325; *Reifsnyder v. Lee*, 44 Iowa 101, s. c. 24 Amer. Rep. 733.

BRICKELL, C. J.—The levy of the attachment was made only by the service of a garnishment. The judgment of the court below, from which the appeal is taken, was rendered, sustaining or overruling demurrers the parties interposed. From these rulings, the counsel have evolved, as the principal question of the case, to which they have directed argument, the liability to garnishment of the moneys or effects, in the possession of the garnishee, the attaching creditor seeks to reach and condemn.

The nature and office of a garnishment is defined and and declared by the Code, in these words : "A garnishment, as the word is employed in this Code, is process to reach and subject money or effects of a defendant in attachment, or in a judgment or decree, or in a pending suit commenced in the ordinary form, in the possession or under the control of a third person, or debts owing such defendant, or liabilities to him on contracts for the delivery of personal property, or on contracts for the payment of money which may be discharged by the delivery of personal property, or on contract payable in personal property ; and such third person is called the garnishee."—Code, § 2994. This section of the Code is but the expression of the nature of a garishment, as

it had been defined and declared, in effect, by a long course of judicial decisions. It is obvious that under the statute, and under prior judicial decisions, a garnishment has a dual office. The one is, and the one in which it is more usually employed, the subjection of a debt, or of a demand originating in contract, or moneys coming rightfully and legally into the possession of the garnishee, which it is a legal duty to pay to the debtor of the creditor suing out the garnishment. The other is, the subjection of moneys or effects in the possession or under the control of the garnishee, which it is a legal duty to deliver to the debtor. With the exception of cases of conveyances, or transfers, or agreements, made to defraud creditors, a garnishment cannot be employed to reach or subject any debt, or any demand, the debtor suing in his own name cannot recover in an action *ex contractu*, or, as it is generally stated, in "an action of debt, or *indebitatus assumpsit*."—1 Brick. Dig. 175, §§ 314, *et seq*. And prior to the adoption of the present Code, the debt or demand, must have been payable or solvable in money only.—1 Brick. Dig. 176, § 320 ; *Jones v. Crews*, 64 Ala. 368. The Code, (Sections 2945-46), enlarges the debts or demands which may be reached by garnishment. Not only debts or demands payable or solvable in money, but a liability "on a contract for the delivery of personal property, or for the payment of money which may be discharged by the delivery of personal property, or on a contract payable in personal property," is within the scope of the remedy. The liability must originate in and be dependent on contract. This remains as essentially the controlling element and characteristic of the remedy, as it was when debts or demands payable or solvable in money only were within its scope. If either of the several contracts to which the remedy is extended is broken, when the facts are ascertained, the law fixes the measure of damages, the value of the property at the time it should have been delivered or paid, with the interest on such value from that time. An unliquidated demand having in it no element of contract, or unliquidated damages, or the right of action for a tort, is not the subject of garnishment.—1 Freeman on Executions, § 167, and authorities cited.

The moneys and effects of the defendants in attachment, in the possession of the garnishee, were obtained

from the defendants by taking them into custody, imprisoning them, and making search of their persons and trunks. The arrest, imprisonment and search were without warrant; without any reason to believe that the defendants, or either of them, had committed, or intended the commission of, any offense against the law of this State. The only inducement, or moving cause for it, vouched by the garnishee, was a telegram adressed to him as chief of police of the city of Montgomery, by the chief of police of the city of New Orleans, requesting that he see the conductor of an approaching railroad train, ''and keep track of Baker and Peterson, swindling commission merchants.'' The statute authorizes the policemen of an incorporated city or town, within the limits of the county, with or without warrant, to make arrests in all cases in which the sheriff is authorized to make them.—Cr. Code, § 4260.

As a general rule, at common law an arrest could not be made without warrant. If a felony was committed, or a breach of the peace threatened or committed, within the view of an officer authorized to arrest, it was his duty to arrest without warrant, and carry the offender before a magistrate. Or, if a felony had been committed, and there was probable cause to believe a particular person was the offender, he could be arrested without warrant.—*Halley v. Mix*, 3 Wend. 350, s. c. 20 Am. Dec. 702; *Burns v. Erben*, 40 N. Y. 463. The matter of arrests is now the subject of statutory regulation, largely affirmatory of the rules of the common law.— Cr. Code, §§ 4260–4274. The statutes, and the corresponding rules of the common law, have primary, if not exclusive, relation to the administration of the criminal laws of the State. If an arrest be legal, under what conditions, and for what purposes, there may be a search of the person arrested, and what things found upon his person may be taken into possession by the officer making the arrest, was the subject of very full and deliberate examination and exposition in *Ex parte Hurn*, 92 Ala. 102. A repetition of what is there said is not now necessary. A search of the person arrested is justifiable only as an incident to a lawful arrest; if the arrest be unlawful, the search is unlawful, and is aggravated by the illegality of the arrest.

If a person charged with treason, felony, or other

crime, in another State, has fled therefrom, and is found in this State, the statutes provide for his apprehension and detention to await a requisition from the Executive of the State in which the crime was committed.—Cr. Code, §§ 4747–4760. Under these statutes, a warrant of arrest must issue from a magistrate having authority to issue such warrants. In the absence of statutes, upon common law principles, the apprehension and detention of persons charged with crime in other States, was effected through judicial officers, upon probable cause being shown by appropriate evidence.—*Morrell v. Quarles*, 35 Ala. 544; 1 Kent Com., 36—37. The intervention of a judicial officer and a warrant of arrest were deemed the more orderly, if not the only course of legal procedure. The current of judicial decision supports the proposition that when the matter of apprehension and detention is regulated by statute, the statutory mode of procedure must be observed, and that arrest and detention otherwise is illegal.—*Malcolmson v. Scott*, 56 Mich. 459; *State v. Shelton*, 79 N. C. 605; *Ex parte Cubreth*, 49 Cal. 435; *Ex parte Thornton*, 9 Texas, 635; *Matter of Heyward*, 1 Sandf. Sup. Ct. (N. Y.) 702; *Matter of Leland*, 7 Abbott Pr. Rep. (N. S.) 64; *Matter of Rutter*, *Ib.* 67.

Whether an officer, having authority to make arrests, may not, without warrant, arrest a person in this State whom he has reasonable cause to believe has committed a felony in another State, and to have fled therefrom, is a question, upon which this case does not require the expression of an opinion. If the authority exists, to support its exercise, there must be reasonable cause to believe that the crime supposed to have been committed is a felony, not a less offense, under the law of the State in which it was committed; that the person arrested committed it, that he is a fugitive from the justice of the State. Without the concurrence of these facts the arrest can not be justified. The telegram which was the moving cause of the arrest, imprisonment, and search, and the only source of all the information the garnishee had, and upon which alone he acted, is incapable of any interpretation or construction, importing that the defendants had been guilty of felony. The only words which can be supposed to impute criminality, found in the telegram, are the words, ''swindling commission mer-

chants." The word *swindling* has no legal or technical meaning; and commonly, it implies, that there has been "recourse to petty and mean artifices for obtaining money, which may or may not be strictly illegal." The disappointed and vexed creditor not infrequently will apply the term swindler to a delinquent debtor, and an absconding debtor is not infrequently spoken of as having swindled his creditors. Words of such uncertain meaning can not justify or excuse an invasion of the personal liberty of the citizen, or of him who is within the jurisdiction of the State, entitled to the protection of its laws. An officer can not justify an arrest upon the ground, that he had reasonable cause to beleive the person arrested had committed a felony, unless he has information of facts, derived from those reasonably presumed to know them, which, if submitted to a judge or magistrate having jurisdiction, would require the issue of a warrant of arrest, and the holding of the accused to await further examination.—*Malcolmson v. Scott*, 56 Mich. 459. We do not deem it necessary to consider the subsequent correspondence with the chief of police of the city of New Orleans. It was not upon this correspondence the arrest, imprisonment and search of the defendants were made, and what it may import is immaterial. An illegal arrest can not be justified by facts subsequently ascertained; nor can an arrest made for one purpose, be justified for another.

The moneys and effects in the possession of the garnishee having been obtained by him illegally, tortiously, the relation of debtor and creditor did not exist between him and the defendants in attachment; the only relation he bore to them was that of a tortfeasor, and from that relation no debt, no demand having in it the element of contract and the subject of garnishment, could arise. But it is contended that while this may be true, the garnishee may be charged because he had in his possession and under his control, moneys and effects of the defendants in attachment. The contention can not be supported. A garnishment, whether it is employed to reach and subject debts or demands due and owing by the garnishee to the attachment or judgment debtor, or moneys or effects of the debtor in the possession of the garnishee, presupposes a contractual relation existing between the debtor and the garnishee. It is, in effect,

the institution of a suit by a creditor against the debtor of his debtor; the substitution of the creditor to the right and remedy of his debtor; the right and remedy springing from a contractual relation existing between the debtor and the garnishee.—1 Brick. Dig. 173, § 276. The debtor may have an election to pursue the garnishee in an action for a tort, or to waive the tort, and pursue him for money had and received. The creditor can not make the election, he can not waive the tort; the election pertains only and exclusively to the debtor.—*Lewis v. Dubose*, 29 Ala. 219. It would be a diversion of a garnishment from its real office and purposes, if it were employed to redress torts committed against the debtor, and to reach and subject moneys or effects the possession of which is not held in his right, but is held adversely and in hostility to him. In *Despatch Line v. Bellamy Mfg. Co.*, 12 N. H. 205, s. c. 37 Am. Dec. 203, it was held, that a trespasser in the possession of another's goods can not be charged as a garnishee. The correctness of this decision has been questioned.—2 Wade on Attachments, § 415. But we are assured it is in accordance with the theory of garnishment as it exists under our statutes, and corresponds to the course of our decisions.

Lastly, the contention is, that as the plaintiff in attachment had no agency in or connection with the tort by which the garnishee obtained possession of the moneys or effects, they have the right to pursue them in his hands. Whatever of force there might be in this contention, if there had been a levy of the attachment on the moneys and effects, it is not now necessary to consider. Such levy was not made; instead of it, the garnishment was resorted to, and if there had been a liability resting on the garnishee within the scope of that remedy, he would have become a mere custodian of the property, subject only to the duty of taking care of the property, until judgment was rendered in the garnishment suit; and the degree of care he was bound to exercise, would have been dependent upon the contractual relation existing between him and the owner from whom possession was derived.

We have considered all the questions presented in the arguments of counsel; we find no error in the judgment of the court below, and it must be affirmed.