# Sanders *v.* The State.

## *Murder.*

(Decided February 13, 1913.   61 South. 336.)

1. *Criminal Law; Continuance; Discretion.*—The granting of a continuance in a criminal case on account of the absence of a witness is a matter within the discretion of the trial court.

2. *Same; Misconduct of Jury; Separation.*—Where it was not shown that he mingled with outsiders it was not error, in a murder trial, to refuse to quash the panel of jurors because one of them separated from the others.

3. *Trial; Objections to Evidence; Sufficiency.*—Where a defendant does not object to a question, it is not error to overrule his motion to exclude a relevant answer.

4. *Same; Objections to Instructions.*—A single objection to a part of the charge involving several propositions, some of which are correct, is properly overruled.

5. *Appeal and Error; Harmless Error; Evidence.*—Where the court afterwards excluded irrelevant testimony, its former omission was rendered harmless.

6. *Homicide; Instructions; Abstract.*—Where a homicide was committed while deceased was attempting to arrest defendant, a charge asserting that where there was no reasonable cause to apprehend any worse treatment than a legal arrest would subject one to, he must submit to an illegal arrest and seek redress at law, was harmless to accused, and did not constitute reversible error, even if abstract.

7. *Same; Manslaughter; Resisting Unlawful Arrest.*—The killing to avoid an unlawful arrest, or attempt to arrest, is general manslaughter only, but is not reduced to manslaughter unless committed under the influence of passion induced by the provocation.

8. *Same; Self-Defense.*—One is entitled to resist an unlawful attempt to arrest him, even to the extent of killing the person attempting to make the arrest if necessary to save his own life, or save himself from great bodily harm; but the necessity must be real or reasonably apparent.

[Sanders v. The State.]

9. *Same; Unlawful Arrest.*—In a homicide committed while deceased was attempting to arrest accused as a supposed fugitive from justice, where the evidence showed that deceased was not deputized to arrest defendant, had no process for arrest, and acted on the supposition that accused was a fugitive from justice, defendant was entitled to charges asserting that decedent was not authorized to make the arrest, and the fact that a witness told deceased that he had been informed by a peace officer that such officer was following a woman whose husband had committed a felony, and that the woman had stopped at the house of defendant's relatives, did not constitute probable cause authorizing decedent to attempt the arrest; and that defendant was entitled to reasonably and properly resist an attempt to arrest.

10. *Arrest; Right to Make.*—Decedent had no right to arrest, or to attempt to arrest defendant, where he was not deputized for that purpose, and had no process for the arrest, and acted merely on information that a felony had been committed in an adjoining county; that defendant was a fugitive; that an unknown woman was thought to be the wife of defendant, and that such woman was his wife.

(Dowdell, C. J., and McClellan, J., dissent. Mayfield, J., dissents in part.)

APPEAL from Monroe Circuit Court.

Heard before Hon. JOHN T. LACKLAND.

Henry Sanders was convicted of murder in the first degree, and he appeals. Reversed and remanded.

The bill of exceptions shows that several witnesses who had been summoned for the defendant were not present, and, in fact, only one witness was present; and it was stated by counsel for defendant that the witness present was a character witness, and knew nothing of the facts of the case. On this showing the defendant based an application for continuance, which was declined; and it was not shown to the court what was expected to be proved by the witness, nor where the witnesses resided. The court, however, granted an attachment for these witnesses, but declined to continue the case to another day of the term to await service of the process. The bill of exceptions further shows that after the jury had been selected, impaneled, and sworn, and the state was proceeding to state the case to the jury, it was discovered that one of the jurors was absent;

but very, soon he returned into court, and thereupon
the defendant moved to quash the panel, and objected
to proceeding with the trial with that jury. The court
then asked the juror if he had seen or talked with any
one while he was away, and the juror replied that he
had not seen or talked with any one, as there was no-
body in the room but him. Whereupon the court de-
clined to quash the panel, and the defendant excepted.

The witness Brantley, in answer to a question pro-
pounded by the solicitor, testified as follows: "Clinton
Brantley, the man killed, was my brother; he was killed
in McWilliams, at Henry Langham's store, in this
county, by Henry Sanders. My brother went over to
the store to arrest him for a negro wanted at Pine Hill.
This man had followed a woman there; said that this
woman's husband was a man they wanted at Pine Hill
for killing another man. He told my brother that." In
the above testimony the witness was referring to a
deputy sheriff from Wilcox county. The defendant ob-
jected to the testimony on certain grounds stated, and
before the defendant's objection was ruled on by the
court the solicitor asked the following question: "I
understood you to say that Clinton Brantley had been
informed that this man was wanted for killing some one
on the Southern Railway?" To which the witness re-
plied in the affirmative. The defendant then renewed
his objections on the grounds stated, and also moved
the court to exclude the evidence. On the cross-examina-
tion of the same witness, he testified that the man who
came to McWilliams from Pine Hill was a deputy, and
not in fact searching for Henry Sanders, but was after
a negro named Johnson. "I did not have any conversa-
tion with this officer from Wilcox county. It was my
brother who had the conversation, and I was not present
at the conversation." The defendant moved to exclude

all the testimony about the witness' brother getting information from the man that he was hunting for a negro from Pine Hill, and the court replied, "I will exclude all he would say about having received information from anybody up to this time," and the defendant excepted.

The oral charge of the court excepted to was as follows: "The evidence for the state tends to show you that at a railroad station in this county, some time back, that the deceased, as the defendant was getting off the train, asked if that was he, or that the deceased had just come there on the train; that is for you to say; I don't remember. But at that gallery at that place, at that time, the question was asked if this was Henry Sanders, and I don't remember what reply was made; but you remember. Now, the next reply was, 'Consider yourself under arrest,' and just about that time, the evidence here tended to show, he pulled his pistol and fired the shot. Well, now, gentlemen, was that a willful, malicious, deliberate, and premeditated homicide? If so, unless mitigated in some way by the evidence offered, that would be murder in the first degree, the penalty of which would either be death, or imprisonment in the penitentiary for life. If that homicide was willful and malicious, but not deliberate and premeditated, then it would be murder in the second degree."

Witness Hughes testified that he was the constable and deputy sheriff, and was called up over the phone by a man who told him that he was following a woman, who was the wife of defendant, and that he was watching her, thinking that she would go to her man some time. "The man requested me to come to McWilliams, and told me these things, and I told Clinton Brantley that there was a man in town hunting a negro from Pine Hill, charged with murder, and I asked Clinton

and Elmore Brantley to help me get him located and arrested. We looked for the negro on Sunday night, but failed to find him. I told Clinton Brantley to do the arresting and watch the woman, and that there was a reward for the arrest of this negro."

The court gave, at the request of the state, the following charge: "The court charges the jury that, when there is no reasonable cause to apprehend any worse treatment than a legal arrest would subject him to, it is the duty of a person to submit to an illegal arrest and seek redress at law." After the reading of this charge, the court remarked: "When a man is arrested, it is his duty to submit to the law and wait on the action of the law, unless the mere fact of an arrest subjects him to worse treatment than he would otherwise get."

The following charges were refused to the defendant:

(20) "I charge you that, under the facts shown by the evidence in this case, Clinton Brantley was not authorized to arrest the defendant."

(21) "I charge you that the fact that the witness Hughes told Brantley that he had been informed by a peace officer that such officer was following a negro woman whose husband had committed a felony, and that the woman had stopped at the house of defendant's relatives, did not constitute probable cause, authorizing Brantley to attempt the arrest of the defendant; and the defendant was authorized to reasonably and properly resist such attempted arrest, provided such resistance was not greatly disproportionate to his threatened injury."

(22) "I charge you that the witness Hughes was not such an officer of the law as was authorized to deputize the deceased to lawfully arrest the defendant."

(24) "I charge you that, under the evidence in this case, the state has failed to show that Clinton Brantley

was legally authorized to attempt the arrest of the defendant; and that in making such attempt he was committing a trespass, which the defendant had a right to resist, provided such resistance was not greatly disproportionate to his threatened injury."

F. W. HARE, for appellant. Counsel discusses the refusal of the court to grant defendant a continuance and insists that the facts remove it from the influence of the stated doctrine that it is within the discretion of the trial court. The court erred in failing to grant the motion of defendant to quash the panel because of the separation of the juror.—*Williams v. State,* 45 Ala. 57; *Robbins v. State,* 49 Ala. 394; *James v. State,* 53 Ala. 380. The court erred in refusing charges 1, 6, 8, 12, 14, 16, 11, 22, 23, 20, 24, 21 and 26 requested by defendant. —*Snell v. Derricot,* 49 So. 895; 3 Cyc. 875; *Morrell v. Quarles,* 45 Ala. 544; *Cary's case,* 76 Ala. 78; *Brown v. State,* 109 Ala. 70. Counsel discusses the evidence, but without further citation of authority.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. No error can be imputed to the action of the court in declining a second continuance on account of the absence of the same witness. In any event, it was within the discretion of the trial court.—*Cunningham v. State,* 117 Ala. 59; *Carr v. State,* 104 Ala. 4; *Davis v. State,* 92 Ala. 20; *White v. State,* 86 Ala. 69; *Ex parte Jones,* 66 Ala. 202; *Starr v. State,* 25 Ala. 49. Defendant's motion to quash the venire was properly overruled.— Sec. 29, Acts 1909, p. 17; *Bailey v. State,* 55 South. 601; *Savage v. State,* 57 South. 469. The defendant's only recourse was to move for a discharge on the ground that he had been placed in jeopardy or for a motion

for a new trial, either of which would have been un-availing.—*Williams v. State,* 45 Ala. 57; *Robbins v. State,* 49 Ala. 394.   Objections to questions must be interposed when the questions are asked.—*So. Ry. v. Laird,* 146 Ala. 349; *Washington v. State,* 106 Ala. 58. It is proper to show the authority of deceased to arrest defendant, he having been told that he was wanted for homicide.—*Corey v. State,* 76 Ala. 78; Sec. 6272, Code 1907.   Exceptions are not sustained when taken to a charge as a whole, parts of which state correct proposi-tions.—*Lacy v. State,* 154 Ala. 65.   Charges 21, 6, 12, 22 and 23 were properly refused.—*Corey v. State, supra.* Charge 16 was incomplete.—*Dryer v. State,* 139 Ala. 117.   The other charges were either charges on the weight of evidence, or were abstract, or were incorrect attempts to state the law of arrest by a private person, and were hence properly refused.—Authorities supra.

MAYFIELD, J.—The first error insisted upon is the refusal of the court to grant a continuance of the case on account 'of the absence of witnesses.   It has been uniformly decided by this court that granting or refus-ing a continuance is a matter resting in the discretion of the trial court, and is not reversible on appeal.

The next assignment insisted upon is that the court erred in not laying the case over until the officers of the court had had the time to issue and return the com-pulsory process for the defendant's witnesses, which the court had ordered issued, because it would be "an empty mockery to grant the defendant the attachments, with-out giving the defendant an opportunity to reap the benefit from the order of the court granting the attach-ments."

The majority of the court are of the opinion that there was no error in the court's refusal to quash the

panel of jurors. The juror who separated from the others was shown not to have mingled with the crowd, and not to have conversed with any one. He merely stepped into a closet, in which there was no other person. It therefore affirmatively appears that no injury resulted therefrom.

We find no reversible error in the rulings of the court admitting or rejecting testimony offered. Counsel for appellant complains of the condition of the record, and concedes that it is difficult to review the rulings on the evidence for lack of "clearcut and distinct exceptions." To this we must answer, that we can only review the record presented to us. Some of the evidence admitted against the defendant was not admissible, if prompt and proper objections had been interposed and proper exceptions reserved to the action of the court in admitting it. In some instances it does not appear that any objection was interposed to questions, yet motions were made to exclude the answers, which were responsive. A party cannot thus speculate as to whether the answer will be favorable or unfavorable, and, if the latter, then move to exclude it. Moreover, the court did subsequently exclude some of this irrelevant testimony thus admitted. For example, the court excluded all that George Brantley said as to having received information that the deputy from Wilcox was hunting for a negro from Pine Hill, Wilcox county, and all the testimony as to the woman in question being the wife of the defendant.

Some parts of the oral charge excepted to stated parts of the evidence which were undisputed and did not charge upon the effect of the evidence. The part excepted to involved more than one distinct proposition of law, and some of these propositions were correct. If we concede that some of that excepted to was bad, we

could not reverse, because it was not separated from that which was good; and if the court had excluded that part which was excepted to it would have excluded that which stated a correct proposition of law applicable to the case. And, of course, the defendant had no right to have that.

There was no error in giving the charge requested by the state, nor in the remarks of the court explaining it to the jury. If it could be said to be abstract, this is not ground for reversal because of giving it.

Under the undisputed evidence in this case, the deceased had no authority or right to arrest, or to attempt to arrest, the defendant on the occasion when the deceased was killed. The constable and deputy sheriff, Hughes, had no authority, under the evidence in this case, to deputize the deceased to arrest the defendant on the occasion on which he attempted to arrest him.

This case is much like that of *Lewis v. State,* 178 Ala. 26, 59 South. 577. In fact, the defendant in that case killed the person who had arrested him without authority of law, and, strange to say, he was the "individual desired," when this defendant was attempted to be arrested, for no other reason than that his wife had been mistaken for the wife of Lewis. In the *Lewis Case, supra,* it was claimed by the state that the deceased, the party making the arrest, had been deputized for that purpose by another deputy, and was also armed with a warrant or capias to that end. In the case at bar there is no pretense that deceased was deputized to arrest this defendant, or that he had any process for the arrest of this defendant. In fact, there was no warrant or capias against this defendant, and no claim that there was. The most that can be said to justify deceased in attempting to arrest the defendant was that he had been informed that a felony had been committed in an

adjoining county, and that the felon was a fugitive; but he had never been informed that this defendant was the felon, but had been informed merely that an unknown woman was in the town of McWilliams, and that she was thought to be the wife of the felon, and he subsequently learned that she was the wife of defendant. The deceased, so far as the evidence shows, knew the defendant, and had known him a long time, and knew he was not a fugitive, and had never been so informed, so far as this record shows. It does appear, however, that deceased was instructed by the constable, Hughes, to locate the husband of this woman whom the deputy from Wilcox had followed to McWilliams; and that there was a reward of $200 offered for the arrest of the fugitive. But there was no probable cause to believe that this defendant was the fugitive.

"Every homicide, perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or the attempt to perpetrate, any arson, rape, robbery, or burglary, or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed; or perpetrated by any act greatly dangerous to the lives of others, and evidencing a depraved mind regardless of human life, although without any preconceived purpose to deprive any particular person of life, is murder in the first degree; and every other homicide committed under such circumstances as would have constituted murder at common law, is murder in the second degree."—Code 1907, § 7084.

In the case of an unlawful arrest, or attempt to arrest, killing the person attempting it is, as a general rule, manslaughter only. A person seeking unlawfully to arrest another is a trespasser; and the trespass is

a ground of provocation sufficient to reduce the homicide of such person in resistance of the arrest from murder to manslaughter, though it is not so reduced, unless the person sought to be arrested actually acted under the influence of hot blood induced by the provocation. And such an attempt unlawfully to arrest gives the person sought to be arrested a right to resist, even to the extent of killing his opponent, if such killing is necessary to save his own life, or to save himself from serious bodily harm; but the necessity must have been real or apparent. The amount of force which he may use in self-defense, however, is that only which is necessary to prevent the carrying out of the unlawful purpose. If excessive force is used in making resistance, the right of self-defense is eliminated; and killing, by means calculated to cause death, with knowledge that the intent was only to arrest, is murder; and an unintentional killing in making such resistance, by means not calculated to cause death, is manslaughter.—66 L. R. A. 386, 387.

"As a general rule, at common law an arrest could not be made without warrant. If a felony was committed, or a breach of the peace threatened or committed, within the view of an officer authorized to arrest, it was his duty to arrest without warrant and carry the offender before a magistrate. Or, if a felony had been committed, and there was probable cause to believe a particular person was the offender, he could be arrested without warrant.—*Holley v. Mix,* 3 Wend. [N. Y.] 350, 20 Am. Dec. 702; *Burns v. Erben,* 40 N. Y. 463. The matter of arrests is now the subject of statutory regulation, largely affirmatory of the rules of the common law.—Cr. Code 1886, §§ 4260-4274. The statutes, and the corresponding rules of the common law, have primary, if not exclusive, relation to the administration

of the criminal laws of the state."—*Cunningham v. Baker*, 104 Ala. 169, 16 South. 70, 53 Am. St. Rep. 27.

"An officer cannot justify an arrest upon the ground that he had reasonable cause to believe the person arrested had committed a felony, unless he has information of facts, derived from those reasonably presumed to know them, which, if submitted to a judge or magistrate having jurisdiction, would require the issue of a warrant of arrest and the holding of the accused to await further examination.—*Malcolmson v. Scott*, 56 Mich. 459 [26 N. W. 166]." *Cunningham v. Baker*, 104 Ala. 171, 16 South. 71, 53 Am. St. Rep. 27.

This same doctrine was again announced in the recent case of *Suell v. Derricott*, 161 Ala. 274, 275, 49 South. 901, 23 L. R. A. (N. S.) 996, 18 Am. Cas. 636, where it is said: "As a general rule, at common law an arrest could not be made without a warrant; but if the felony or breach of the peace threatened or committed within the view of an officer authorized an arrest, it was his duty to arrest without warrant, or, if a felony had been committed, and there was probable cause to believe that the particular person was the offender, he could be arrested without a warrant; but the matter of arrest is now in this state largely the subject of statutory regulation, which in some degree is an affirmation of the rules at common law. Of course, an officer or a private citizen, under the statute, cannot justify an arrest upon the ground that he had reasonable cause to believe the person arrested had committed a felony, unless he has information of facts, derived from credible sources, or from persons reasonably presumed to know them, which, if submitted to the judge or the magistrate having jurisdiction, would require the issue of a warrant of arrest.—*Cunningham v. Baker*, 104 Ala. 171, 16 South. 68, 53 Am. St. Rep. 27."

"In all cases of the killing of an officer, or of an assistant, in resistance of an arrest, a material inquiry, in determining the degree of the homicide, is whether the party resisting had knowledge or notice of official character and of presence for the exercise of official authority. If there is not such knowledge or notice, the homicide cannot be more than manslaughter, unless the resistance was 'in enormous disproportion to the threatened injury.'—*Noles v. State,* 26 Ala. 31 [62 Am. Dec. 711]; 1 Russell on Crimes, 835; 1 Whart. Am. Cr. Law (9th Ed.) § 413; *Commonwealth v. Drew,* Cases on Self-Defense, 718; *Croom v. State,* 85 Ga. 718 [11 S. E. 1035] 21 Am. St. Rep. 179; *Roberts v. State,* 14 Mo. 138, 55 Am. Dec. 97." *Brown v. State,* 109 Ala. 89, 90, 20 South. 110.

"It is not the duty of the citizen to submit to any other than a lawful arrest. It has been said the duty is found in the law side by side with the right of resistance to an unlawful one; and it is quite as important that no one should be unlawfully taken as that every one lawfully accused should be made to answer.' —*Drennan v. People,* 10 Mich. 169. The requirements of the statute are drawn from and in affirmation of the common law. They are ample to secure the execution of and submission to legal process; but they are equally intended to protect the citizen from unlawful interference with his personal liberty. It is not intended that he shall yield his person and liberty to the dominion of even a known public officer, certainly not to one unknown, upon his mere demand, who gives no information of his authority. If this were not true, no man would be safe from invasions of his personal liberty, and unlawful arrests would be made effectual."—*Brown v. State,* 109 Ala. 91, 20 South. 111.

But the mere fact that an illegal arrest is being attempted does not, without more, justify the party being arrested in killing the party attempting to make the arrest. The law upon this subject has been well stated in *Noles' Case,* 26 Ala. 31, 42 (62 Am. Dec. 711) : "To excuse one individual for taking the life of another, there must exist a necessity to prevent the commission of a felony or great bodily harm, or a reasonable belief in the mind of the slayer that such necessity does exist. If there is neither the existence of such necessity, nor any reasonable belief of its existence, the law will not acquit the slayer of all guilt.—*Oliver v. State,* 17 Ala. 587; *Pritchett v. State,* 22 Ala. 39 [58 Am. Dec. 250]. The case of a mere trespass upon the person and liberty of the slayer, which created no reasonable belief in his mind that any of the trespassers would commit any felony or do him any great bodily harm, cannot be allowed to constitute an exception to the foregoing rules. When such trespass is threatened or committed, he has no *right* to kill, unless the unlawful act, when properly and lawfully resisted by him, is persisted in by the trespasser, until it ultimately results either in an actual necessity on his part to kill, in order to prevent the commission of a felony or great bodily harm, or in the reasonable belief by him of the existence of such necessity."—22 Ala. 42, 58 Am. Dec. 250. "We admit the right of any citizen to resist any attempt to put any illegal restraint upon his liberty. But his resistance must not be in enormous disproportion to the injury threatened. He has no right to kill to prevent a mere trespass, which is unaccompanied by any imminent danger of great bodily harm or felony, and which does not produce in his mind any reasonable belief of such danger."—22 Ala. 43, 58 Am. Dec. 250.

It follows, in the opinion of Justices ANDERSON and SAYRE and of the writer, that charges 20, 21, 22, and 24, requested by the defendant, stated correct propositions of law as applied to the facts of this case, and had no duplicates; and that their refusal was reversible error.

Justices SOMERVILLE and DE GRAFFENRIED are of the opinion that charges 20, 21, and 24 were correct, and should have been given, but are not willing to reverse as to charge 22. None of the Justices, however, except the writer, is willing to reverse as to the action of the trial court in declining to postpone the trial until the process desired for the witness should be issued and returned; so what is hereafter said by the writer on this subject is his individual view, and not that of the court.

There were, however, other charges requested by the defendant, which stated correct propositions of law, but as to each of such the court gave other written charges which were substantial duplicates of those refused, and as to these it was error without injury.

Reversed and remanded.

ANDERSON, SAYRE, SOMERVILLE, and DE GRAFFENRIED, JJ., concur, as above shown. DOWDELL, C. J., and MC-CLELLAN, J., dissent.

MAYFIELD, J.—(concurring).—The writer, however, for himself only, desires to say:

I think there was reversible error in this particular case. The state Constitution secures to the defendant in criminal cases, among other rights, the right "to have compulsory process for obtaining witnesses in his favor."

This court, in *Walker's Case*, 117 Ala. 85, 88, 23 South. 670, said: "No convenience of the court, nor any condition of the docket of the cases for trial, can

authorize the denial of this right to the accused, guaranteed to him by the Constitution of the state."

In the case of *Rodgers v. State,* 144 Ala. 34, 40 South. 573, this court, through Simpson, J., said: "It is true that, although the matter of continuance is, as a general rule, within the discretion of the trial court, and will not be reviewed, yet the courts will not allow this rule to operate to the extent of depriving a defendant of the benefits of the constitutional guaranty 'to have compulsory process for obtaining witnesses in his favor.'— *Walker v. State,* 117 Ala. 85, 88, 23 South. 670, 671; *Hill v. State,* 72 Miss. 527, 17 South. 375. In order, however, to bring the matter properly before this court, the defendant is required to make proper motions and exceptions in the court below, so that the record may show whether or not he has been deprived of a substantial right."

Such motions and exceptions were interposed in this case. The bill of exceptions in one place contains this recital: "It was not shown to the court where such witnesses resided, nor what the defendant expected to prove by them" But, preceding this negative recital or conclusion, it is affirmed that "all the witnesses but one resided in the state; that they were material witnesses; that they were eyewitnesses; and that they were not absent by consent of the defendant." Moreover, the only purpose of stating the residence of the witness is to show whether he can be reached and his attendance secured by compulsory process, and whether or not the issuance of the process would be futile.

Likewise, the only purpose of a showing as to what the defendant expects to prove by the witnesses is to show whether or not such evidence would be relevant or material, and, therefore, whether or not the process would be of any service to the accused.

It was clearly shown in this case that the witnesses, all but one, could have been brought into court by process; and that they were material witnesses to the very res gestæ of the killing. Moreover, it conclusively appears that the court considered the showing sufficient, because it twice ordered the process to issue, but twice declined to postpone the trial so as to allow the process to be served and the witnesses brought in. I cannot understand why the court should have ordered the process to issue, when it was informed that, unless the trial was postponed to allow the process to issue and be returned, its issuance would be an empty mockery. This, in my opinion, was, in effect, to deny to the accused his constitutional right to the process. To order it to issue, when it was evident that it could not be issued and returned in time to be of any service, was tantamount to denying the right to the process.

These constitutional rights, secured to defendants in criminal trials, should no more be evaded than denied. The courts are the guardians of these rights, and must see that they are enforced—secured to the defendants for whose benefit they were reserved by the people out of the powers granted by the Constitution, and for this purpose written into the Bill of Rights.

An appeal very similar to this was brought before the Supreme Court of Arkansas. In that case the constitutional guaranty was attempted to be evaded or gotten around, both by a statute and a rule of practice of the court as to showings for absent witnesses; and that court, through Cockrill, C. J., spoke as follows: "Section 10 of the Declaration of Rights in the Constitution of 1874, among other things, guarantees to the accused in all criminal prosecutions the right 'to have compulsory process for obtaining witnesses in his favor.' It is not necessary to recount the evils entailed by the

ancient criminal prosecution, when the accused was allowed to swear no witness to his defense, or to give the history of the struggle, which led to the guaranty to the accused of the right to have his witnesses deliver their testimony orally at the time and place of trial, in order to understand the meaning of this provision. 'Compulsory process for obtaining witnesses means the right to invoke the aid of the law to compel the personal attendance of witnesses at the trial, when they are within the jurisdiction of the court. It is a substantive right, a real right, and not an illusory sham to be satisfied by the issue of process, which is to be rendered ineffectual by hastening on to immediate trial. A reasonable opportunity to make the process effective must be afforded; else what the framers of the Constitution term 'a right to be enjoyed' by the accused is only a mockery to vex him. The process is 'for obtaining witnesses'—not the less availing concession of the prosecuting officer that the witness, if obtained, would swear to the statements made by the accused. The personal presence of a witness of truth is of inestimable value before a jury; and if the application of the statute in question to criminal prosecution would abridge the constitutional right to compel his attendance the statute cannot be made to apply to that class of cases. The Legislature is powerless to proceed in the face of the constitutional restraint. No consideration of expediency, of cost, or convenience in the rapid disposition of causes on the criminal calendar can enter into the determination of the question; it is simply one of power, and in that the Constitution has set the boundary to the courts and Legislature alike, without granting to either the discretion to depart from its mandate upon any idea of expediency."—*Graham v. State,* 50 Ark. 164, 165, 6 S. W. 722.