The defendant was indicted and convicted of assault with intent to murder and sentenced *Page 576 
to ten years in the state penitentiary.
The State's evidence was sufficient to prove beyond any reasonable doubt that the defendant was guilty as charged. Around 8:30 on the evening of March 27, 1978, the defendant drove to the residence of Larry G. Brakefield in Jefferson County. Mr. Brakefield and his family were renting their house from the defendant's ex-wife. The defendant had a 25 percent interest in the house which he had acquired through divorce proceedings. The Brakefields had never met the defendant prior to that day.
The defendant began cursing Mr. Brakefield telling him to get out of his house. Brakefield, with a loaded .22 pistol in his hip pocket, went outside and walked toward defendant's truck "trying to get close enough to tell what he was saying". When Brakefield was approximately thirty feet away the defendant "reached down in the seat and picked up something. When he did, I just dove for the ground and two shots went over my head." The two shots hit the house occupied by Brakefield's wife and nine year old daughter. Brakefield fired six shots into defendant's truck as it was "pulling off". In the meantime Brakefield's eighteen year old stepson, Billy Ray Pierce, retrieved his shotgun from inside the house and "shot up in the air" in defendant's direction.
A few minutes later the defendant drove past the Brakefield's house firing "at least three or four" shots. Mr. Brakefield testified: "I cut out all the lights in the house, got my wife and little girl and put them in the pantry room . . . where the bullets wouldn't penetrate." Mr. Brakefield and Billy next went outside with their shotguns. Again the defendant drove by the house and "started shooting again", firing four or five times. Brakefield and his son shot at the defendant: "He shot all the way by and we started shooting back."
The defendant managed to elude the deputy sheriffs who gave chase as he was leaving the scene, but was soon apprehended at his trailer. At that time the defendant's "(s)peech was slurred" and there was "a strong odor of alcoholic beverages about his breath". It was the opinion of two police officers that the defendant was "intoxicated".
The defendant testified that Brakefield was the aggressor and that he was simply driving down the road when he was fired upon by a man with a "long gun".
 I
The defendant alleges that the trial court abused its discretion in not granting a continuance requested in order to secure the presence of a material and necessary defense witness. We find no such abuse.
The desired witness was the defendant's sister who lived in Florida. The testimony she would allegedly give was that although "she was not present at the scene, . . . she was present when the victim's landlady made a statement that she would have the defendant killed" (the victim being Mr. Brakefield, the landlady being defendant's ex-wife). On the morning of trial defense counsel stated: "In going over the testimony this morning, it became known to me for the first time to myself that there is a witness, a sister of the defendant, who is presently residing in Florida who can offer testimony in this case which would give a basis or give credence to the fact that the, quote victim in this case was actually the aggressor." (emphasis added)
In overruling the defendant's motion the trial court stated: "I don't see how it is admissible . . . I think that is hearsay." The court did point out, however, that if the defense wanted to attempt to introduce such testimony it had a full day to have the witness available. The court did not expect to conclude the defense evidence until the next day. "I don't see why she can't get up here."
We note that the offense was committed on March 27, 1978. The defendant was arraigned in the presence of his attorney on May 5 and his trial did not commence until August 16.
The cases are legion that the matter of granting a continuance in the trial of a *Page 577 
criminal cause is clearly within the trial court's discretion and such exercise will not be disturbed unless there be a clear showing of abuse. Fletcher v. State, 291 Ala. 67, 277 So.2d 882
(1973); Hite v. State, 282 Ala. 497, 213 So.2d 229 (1968);Rogers v. State, 365 So.2d 322 (Ala.Cr.App.), cert. denied,365 So.2d 334 (Ala. 1978). Many times it has been held to be within the trial court's discretion to grant a continuance in the absence of a particular witness. Hannon v. State, 284 Ala. 487,226 So.2d 90 (1969); Sanders v. State, 181 Ala. 35, 61 So. 336
(1913); Hillyer v. State, 351 So.2d 646 (Ala.Cr.App.), cert. denied, 351 So.2d 648 (Ala. 1977). A continuance is properly refused where the testimony sought is not material. Hite, supra; House v. State, 139 Ala. 132, 36 So. 732 (1904). Certainly it would serve no purpose to grant a continuance where the sought-after testimony was clearly inadmissible.
It is discretionary with the trial court to deny a continuance where the absent witness is not within the jurisdiction of the court. Ward v. State, 31 Ala. App. 415,18 So.2d 103 (1944). It has been specifically held that a defendant is entitled to a continuance so as to have compulsory process for obtaining witnesses in his favor only when it appears that the witnesses are within the court's jurisdiction; otherwise such process would be impotent and a continuance in order to grant it would be useless. Walker v. State, 117 Ala. 85,23 So. 670 (1898); Curtis v. State, 9 Ala. App. 36,63 So. 745 (1913).
The above standard of broad discretion in granting a continuance is applicable when the basis for the motion is that counsel has not had sufficient time to prepare and make defense and locate certain persons. Smith v. State, 282 Ala. 268,210 So.2d 826 (1968). Counsel is expected to exercise diligence in preparing his case for trial and for procuring necessary witnesses. Reese v. State, 32 Ala. App. 449, 26 So.2d 723
(1946); Jones v. State, 21 Ala. App. 486, 109 So. 759, cert. denied, 215 Ala. 95, 109 So. 761 (1926). A continuance is likewise discretionary where lack of preparation is caused by the accused's refusal to cooperate with counsel. Boswell v.State, 290 Ala. 349, 276 So.2d 592 (1973).
Applying the foregoing principles of law to the present facts, we are convinced that the trial court did not abuse its discretion in denying the continuance.
 II
The defendant maintains that the trial court improperly considered his arrest record and hearsay information in fixing his punishment at ten year's imprisonment. We disagree.
A sentencing hearing was conducted on October 6, 1978, at which time the trial court had in its possession a "report of pre-sentence investigation". This report was provided by the State Board of Pardons and Paroles and included the defendant's "criminal history".
Spanning eighteen years, the defendant's "criminal history" reveals that he has been charged in four states on thirty separate occasions with a variety of criminal activity apart from the instant offense. The charges range from assault with intent to rob and grand larceny of an automobile in the felony categories, to simple assault, public drunkenness and driving while intoxicated in the misdemeanor categories. Seventeen different offenses were charged in all. Many of these charges involved the use of alcohol. Of the thirty total offenses charged, thirteen resulted in convictions. The assault with intent to rob conviction resulted in a five year prison sentence with the defendant being placed on probation. The other convictions resulted in fines. Considering only the defendant's convictions there is little wonder the trial court felt compelled to comment, "Mr. Godfrey, with a record like this I can't do anything except do something pretty stiff".
The Probation and Parole Supervisor who filed the presentence investigation report noted, in her report, that the defendant "lied . . . several times". In her opinion, the defendant "would be a poor risk for probation". *Page 578 
At the sentencing hearing, the defendant made no objection to the report of presentence investigation. Practically the only comment made by defense counsel at the hearing was:
 "Judge, I'll admit it is not a very flowery report. Nothing in there is of a serious nature. Most of them are drinking arrests and quite a few of those were brought about by his ex-wife through warrants she issued."
A sentence imposed by a court has been held lacking in due process where the defendant was not represented by counsel and the sentence was imposed by the trial judge under the mistaken belief that the defendant was guilty of other crimes. Townsendv. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948);Smith v. United States, 223 F.2d 750 (5th Cir. 1955). Here there is no showing that the sentencing judge was under any mistaken belief or false impression. We specifically note that the dispositions of each charge appear in the criminal history.
Our Supreme Court has stated that in a capital case where only significant criminal history may be considered as an aggravating circumstance the trial judge may not consider a pending charge in deciding whether to sentence a defendant to death or life imprisonment without parole. Cook v. State,369 So.2d 1251, 1257 (Ala. 1978). This defendant was not faced with a "life or death situation" and the trial judge was not limited to a consideration of only "significant" criminal history. InUnited States v. Weston, 448 F.2d 626, 633 (9th Cir. 1971), it was noted:
 "A number of courts, including this court, have frequently cited Williams [Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337, (1949)] for the general proposition that evidence of other criminal conduct not resulting in a conviction may be considered in imposing sentence. We have done so a number of times: See United States v. English, 9 Cir., 1970, 421 F.2d 133 (dictum); Austin v. United States, 9 Cir., 1969, 408 F.2d 808; Ward v. California, 9 Cir., 1959, 269 F.2d 906; Taylor v. United States, 9 Cir., 1950, 179 F.2d 640. None, however, is inconsistent in its actual holding with the result we reach here. Other circuits have done the same. See Jones v. United States, 1962, 113 U.S.App.D.C. 233, 307 F.2d 190; United States v. Doyle, 2 Cir., 1965, 348 F.2d 715, 720-722; United States v. Cifarelli, 2 Cir., 1968, 401 F.2d 512, 514; United States v. Marcello, 5 Cir., 1970, 423 F.2d 993, 1013; United States v. Onesti, 7 Cir., 1969, 411 F.2d 783; United States ex rel. Long v. Pate, 7 Cir., 1969, 418 F.2d 1028. We would not repudiate this rule if we could. We do not desire to transform the sentencing process into a second trial, and we believe that other criminal conduct may properly be considered, even though the defendant was never charged with it or convicted of it. Its relevance to the problem before the judge, `what sort of person is this defendant, and what sort of sentence should she receive?' is apparent."
Consequently, we do not think that the trial judge erred in considering the prior arrests of the defendant which had not resulted in convictions where there is absolutely no indication that he was under any mistaken or erroneous belief that these mere arrests were actual convictions. Furthermore, we particularly note that trial counsel made no objection to the presentence report or the comments of the trial judge during the sentencing hearing. The motion for new trial filed by defendant's appellate counsel makes no specific mention of this matter which on appeal is now found to be objectionable.
It appears that prior to the sentencing hearing the trial judge had received some hearsay information regarding the defendant's conduct. At the hearing the judge commented:
 "since your father came down and put that fifteen thousand dollar cash bond up, you have been like a wild man around here, I get people calling me back from hospitals and everything — the doctor called me from Lloyd Noland saying you had left the hospital." *Page 579 
The defendant admitted leaving the hospital and not returning and offered some excuse for his actions in so doing.
Again, no objection of any type appears in the record which is all we may consider on appeal. Had counsel any objection to either the inclusion of the arrests in the presentence investigation report or the comment by the trial judge on the hearsay evidence he should have made it when the objectionable matter occurred. At the very least the matter should have been called to the attention of the trial judge at some time and not presented for the first time on appeal. We do not think that counsel should be permitted to benefit from any alleged errors which could have easily been corrected at trial had some objection been made.
Even though the judge did allude to hearsay information during the hearing, it is evident that he considered the defendant's behavior at the time of the offense to be of prime importance.
 "I heard the testimony, too, and I thought the testimony was reprehensible, you going back and forth shooting into that house with a child in there and a woman in there and a husband in there. I mean it was like a battle out there. I can't do anything more about it."
Punishment for a conviction of assault with intent to murder is "imprisonment in the penitentiary for not less than two nor more than 20 [twenty] years". Alabama Code 1975, Section 13-1-46. A sentence of ten years' imprisonment for such conviction is not violative of Section 15 of the Constitution, which prohibits excessive fines or cruel and unusual punishment. Parnell v. State, 35 Ala. App. 532, 49 So.2d 919
(1950). We are convinced that the trial court did not abuse its discretion in fixing the defendant's punishment. The defendant was provided due process and equal protection of the law throughout all the proceedings incident to this case.
We have considered each issue raised by the defendant. In addition, we have searched the record as required by law. Finding no error, the judgment of the Circuit Court is due to be affirmed.
AFFIRMED.
All the Judges concur.